Jacobs vs. Davis.

CURTIS W. JACOBS *vs.* PETER L. DAVIS.

*Covenants; when Joint and when Several—What sufficient Assignment of breaches in Action of Covenant—Contracts against Public policy—Construction of a Contract—Damages for breach of Covenant—Demurrer for non-joinder—Admissibility and relevancy of testimony.*

D, H and J owned tracts of swamp land lying adjacent to one another. By a sealed instrument, signed by them all, D and H agreed to let J cut a draining ditch "through their respective lands," and J, in consideration

Jacobs *vs.* Davis.

of this permission, entered into certain covenants. In the clause prescribing the penalty for any breach of the agreement or covenants the parties bind themselves for the "faithful performance of all the agreements made by us respectively each to the other in the sum of $1000." D and H held their lands severally and independently of one another. On breach of one of the covenants by J, D brought suit without joining H as co-plaintiff. The *narr.* was demurred to on the ground that the covenant was made to D and H jointly and not severally. HELD:

1st. That from the terms of the agreement the covenants were made to D and H severally and not jointly.

2d. That the interests of the covenantees being several, the covenants were several, even if the words of the agreement left it doubtful whether the covenants were joint or several.

J received from D permission to cut a draining ditch through his land, and in the deed of agreement, J covenanted not to permit "the owner of G's land to drain through the ditch" described in the agreement. D brought suit for breach of this agreement and it was averred in the *narr.* that J "allowed the owner of the said lands of the said G to cut a ditch into the lands of the said J, so as to drain through the ditches by the said articles of agreement granted and permitted to be cut." HELD:

1st. That this assignment of a breach was sufficient without naming the party who, at the time of the cutting, was the owner of G's land.

2d. That this covenant was not against public policy.

D, for a consideration, permitted J to cut a ditch through his lands. In the deed containing the agreement, J covenanted to begin cutting the ditch "at the point where it intersects the divisional line between the States of Delaware and Maryland, and not to cut it above so as to throw the water down until it can be taken off by the ditch below." D sued J for breach of this covenant, and in the *narr.* it was alleged that the defendant " did cut the said ditch so as to throw the water down before it could be taken off by the ditch below." HELD:

That this was a sufficient assignment of the breach of the covenant.

D and H, by a sealed instrument, agreed to permit J to cut a ditch through their lands. The water course granted was to be " on the east side of the High Bridge Road, and running by and with said road, on the land of the said D and H, until it reaches the divisional line between the States of Delaware and Maryland." J signed the same instrument, and covenanted to cut the ditch in a particular way. A suit was brought for the breach of this covenant, and at the trial, it appeared that the

line of the road by and along which the ditch was to run, passed, for the distance of about seventy yards, through the lands of L, a stranger, before it reached the line between Delaware and Maryland.   HELD :

1st. That the description of the water course, as running by and with the road, must be controlled by the other description of it, as being on the lands of D and H.

2d. That the fact that the line of the road passed, for seventy yards, on the land of L, did not exonerate J from liability for cutting the ditch in a manner different from that covenanted.

3d. That J, if he attempted to cut the ditch at all, was bound, under the agreement, to cut it in the manner covenanted, on the lands of D and H, on the east side of, and as near to, and nearly in the course of the road, as possible.

4th. That evidence to show that J had received no grant of the water-course through the lands of L from D or H or L, was inadmissible.

D, H and J entered into a sealed agreement by which J was permitted to cut a ditch through the lands of D and H, and J, covenanted to cut it in a particular manner.   D brought suit for a breach of this covenant, and J urged, in defence, that the water-course was not granted by deed. HELD :

That if J entered upon the land of D under the agreement, and commenced cutting the ditch, he was obliged to cut it in the mode and direction prescribed in the agreement, and he cannot be permitted, when sued for breach of his covenant, to say that he was not liable because he had no deed.

D and J entered into an agreement by which D agreed to permit J to cut a ditch through his land, and J covenanted to cut it in a particular manner, and not to use it in draining particular lands.   On an action of covenant by D against J for breach of these covenants, HELD :

1st. That the jury could give such damages as they might find to be the natural and necessary result of the act or acts of the defendants, which they might find so justly complained of by the plaintiff in his *narr.*

2d. That the action being one of covenant, and the covenant being such that there could be but one breach and but one recovery, the jury, in assessing the damages, were not limited to the time of the institution of the suit, but were at liberty to allow damages for such permanent injury to the plaintiff as they might find he had sustained.

A demurrer is a proper mode of taking advantage of the non-joinder of a party plaintiff, where that fact is apparent in the *narr.*

Jacobs *vs.* Davis.

The proceedings of commissioners appointed to locate ditches on a swamp, approved of by the plaintiff in a case, are not admissible, on behalf of the defendant, to show the general tendencies of the water from a certain part of the swamp.

A plaintiff, in an action for damages for the improper cutting of a ditch on his lands, offered evidence to show that certain rails and shingles on his premises had been injured thereby. The defendant, in reply, offered to produce in Court one of the rails and several of the shingles, to show their condition, and to prove that they were fair samples of the rails and shingles. HELD:

That the rail and shingles were inadmissible to prove or disprove injury to them; that could only be done by witnesses who had examined them.

D agreed to permit J to cut a ditch through his lands, and J covenanted to cut it in a particular manner and direction, and not to drain certain lands lying adjacent to his through it. On a suit by D for a breach of this covenant, HELD:

That evidence to show for what purpose the lands of J, and those adjoining, were most valuable, was irrelevant and immaterial.

APPEAL from the Circuit Court for Worcester County.

The facts of the case are sufficiently stated in the opinion of the Court.

At the trial of the cause below, the defendant took four exceptions to the rulings of the Court in relation to the admissibility of testimony.

*First Exception:* The plaintiff having offered evidence of the damage done his lands by the water flowing down the ditches cut by the defendant, and having offered evidence as to the general tendency of the water in the swamp above his land, the defendant offered evidence of an agreement, under seal, made by the plaintiff and others, appointing commissioners to lay off ditches and roads on their lands, together with the plats, showing the lands and the roads and ditches laid down by the commissioners, in order to show the general tendencies of the water from a certain part of the swamp, and proposed to follow it up by showing the approval of the action of the commissioners by the plaintiff. To this testi-

mony the plaintiff's counsel objected, and the Court having sustained the objection, the defendant excepted. ·

*Second Exception:* Evidence having been offered by the plaintiff, showing that the line of the ditch along the High Bridge road spoken of in the agreement, ran through the land of George Lewis for some distance, the defendant offered to prove that George Lewis was still the owner of the land, and that neither he nor Davis, nor Holloway, had ever granted the defendant the privilege of a water-course over the said lands of Lewis. The Court refused to admit the testimony, and the defendant excepted.

*Third Exception:* The plaintiff, as a cause of damage, having offered evidence tending to prove that certain fence-rails and shingles on his premises had been injured and rendered comparatively worthless, the defendant, to rebut this evidence and to prove that the rails and shingles had not been injured, proved by a witness, that he had carefully examined the rails and shingles, and did not think they were injured for use or market, except to the extent of natural decay; and further testified, that he had selected from the rails and shingles, one rail and several shingles, which were a fair sample of the said rails and shingles, and that he had the said rail and shingles ready to be produced when called for, to show the condition of the said rails and shingles; and thereupon the defendant offered the said rail and shingles in evidence; to the admissibility of which evidence, the plaintiff objected, and the Court sustained the objection; to this ruling of the Court, the defendant excepted.

*Fourth Exception:* The plaintiff having offered evidence tending to prove the location of the lands claimed by the plaintiff and the said Thomas Holloway, on the east side of the High Bridge Road and binding thereon, and the mode and manner in which the water-course had been opened and cut thereon by the defendant, the defendant offered evidence to prove that he had cut and opened the said water-course in a manner in accordance with the terms of his covenants in

said paper-writing, and of sufficient width and depth for his purpose, and propounded the following question : "For what purpose are the lands to be drained by the ditches, as cut by Mr. Jacobs below Snow Bird Island, and adjoining the lands of the plaintiff, most valuable ?"

To the admissibility of this evidence, as also to the propriety of the question, the plaintiff objected, and the Court sustained the objection. The defendant excepted.

As the prayers referred to in the opinion of the Court embody the principles of law decided, and are numerous and some of them quite long, they are omitted.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*T. A. Spence* and *A. B. Hagner*, for the appellant.

*John H. Handy*, for the appellee.

GRASON, J., delivered the opinion of the Court.

This was an action of covenant instituted by the appellee against the appellant, and the agreement between the parties thereto was set out in the *narr.* A demurrer was filed to the *narr.* and three causes of demurrer were assigned in the argument; first, that the covenant was joint, second, that the breach was not sufficiently assigned in the second count, and third that the covenant not to allow the owner of Gum's land to drain that land through the ditches mentioned in the agreement, is against public policy. It appears on the record that the appellant had obtained, from the proper Court in the State of Delaware, a commission to open, what is termed a tax ditch to drain his lands, through the lands of the appellee and Thomas Holloway, and they, in consideration that the appellant would abandon his proposed tax ditch and not again

apply for one, entered into an agreement with the appellant, under seal and dated the 17th day of September, 1864, by which they covenanted to grant to the appellant the privilege of a water course through their lands, to begin for the head of said water-course on the East side of the High Bridge road, where the appellant's and Davis' lands join, and to run by and with said road on the lands of the appellee and Holloway, until it reached the divisional line between the States of Delaware and Maryland. The appellee and Holloway further agreed to permit the appellant to cut and keep open forever, a ditch on the line aforesaid, of sufficient width and depth for his purposes, reserving to themselves the wood and timber removed in cutting the same. The appellant on his part covenanted to abandon all proceedings in the State of Delaware, to procure a water-course through the lands of the appellee and Holloway, or either of them and not to commence any other; that he would not allow Menaan Gum or any one, who might thereafter own the land of the said Gum, to cut ditches into his, the appellant's land, so as to drain through the ditches by the agreement granted. He also further agreed to cut the ditch first above named and granted, by beginning at the point where it intersects the divisional line between Delaware and Maryland, and not to cut it above, so as to throw the water down, until it could be taken off by the ditch below, and for the faithful performance of the agreement the three parties above named, bound themselves each to the other in the penal sum of $1,000.

The first question to be determined is, whether the covenant made with the appellee and Holloway is joint or several. We have carefully examined the authorities, cited in argument by the counsel of the respective parties, and they all recognize the rule as uniform and well established, that, where the interests of the covenantees are several the covenant is several. *Wright vs. Post*, 3 *Conn.*, 145; *Anderson vs. Martindale*, 1 *East.*, 501; 1 *Chitt. Plead.*, 10; *Eccleston vs. Clepsham*, 1 *Saund.*, 153, *note* 1, and *Slater vs. Magraw*, 12 *G & J.*

270.   In the note in 1 *Saund.*, 153, it is said "though a man covenant with two or more *jointly*, yet if the interest and cause of action of the covenantees be *several*, and not joint, the covenant shall be taken to be several, and each of the covenantees may bring an action for his peculiar damage, notwithstanding the words of the covenant are joint." And in *Platt on Covenants*, 123, the doctrine is laid down "that covenants shall not be construed to be joint or several, from the particular language in which they may be conceived, but shall be measured and moulded according to the interests of the covenantees," and this rule is cited and recognized by the Court of Appeals in the case of *Lahy & Counselman vs. Holland*, 8 *Gill*, 451.   In the case now before us, the appellee and Holloway respectively, owned the lands through which the ditch was to be cut, and which were to be affected by it, and neither claimed nor was entitled to any interest in the land of the other.   Their interests being several the appellant's covenant with them must therefore be regarded as several, even if the words of the covenant left it doubtful whether the covenant is joint or several.   But we think, from the language of the covenant itself, as well as from the several interests of the covenantees in the lands, that this is a several and not a joint covenant, and that the parties to it so intended it to be.   The agreement between the parties grants the privilege of a water-course "through their *respective* lands;" that is, through the lands of the appellee and the lands of Holloway, and not through lands which they own jointly or in common.   They also reserve to themselves the wood and timber which may be removed in cutting the ditch; and it would scarcely be contended that either of them, under the agreement, would have any interest in or claim to the wood and timber which might be cut from the land of the other.   But we think that the closing paragraph of the agreement furnishes unmistakable evidence of the intention of the parties that the covenant should be several and not joint, for in prescribing the penalty for the faithful performance of the covenants the

parties do not bind themselves, the appellant as one party and the appellee and Holloway as the other party thereto, but they bind themselves for the "faithful performance of all the agreements made by us *respectively, each to the other,* in the sum of $1,000." The language employed so plainly indicates the intentions of the parties to enter into several, and not joint, covenants, that no argument or illustration could render it more clear. The appellant covenanted that he would cut the ditch so granted by beginning "at the point where it intersects the divisional line between the States of Delaware and Maryland, and not to cut it above, so as to throw the water down, until it can be taken off by the ditch below." The appellant having entered upon the land and undertaken to cut the ditch, he was guilty of a breach of his covenant if he did not begin to cut, where it intersects the divisional line between the States of Delaware and Maryland. When he availed himself of the grant, he was bound to begin to cut at that point, and to continue from that point towards his own land, so as to avoid "throwing the water down until it could be taken off by the ditch below." An allegation in the *narr.* that the appellant did cut the said ditch so as to throw the water down before it could be taken off by the ditch below, was a sufficient assignment of the breach of his covenant in this respect. The appellants covenant not to allow the owner of Gum's land to drain through the ditch described in the agreement, was made for the benefit of the appellee and Holloway with regard to the land of each of them, and whether the appellant allowed the owner of that land to cut ditches so as to drain into the ditches granted as aforesaid, or cut them himself, it was a palpable breach of the covenant, and an averment in the *narr.* that he allowed "the *owner* of the said lands of said Menaan Gum to cut a ditch into the lands of said Curtis W. Jacobs, so as to drain through the ditches by the said articles of agreement granted and permitted to be cut," is sufficient, without naming the party who, at the time of so cutting, was the owner of said land. But it was ob-

jected to the validity and binding force of this covenant that it was against public policy. We cannot perceive however in what respect it militates against public policy, that the appellee and Holloway, in granting an easement over and through their respective lands, should require from the grantee a covenant that it should not be used in a manner or for a purpose, which, in their judgment, would inflict an injury upon them.

The water-course to be granted was to be " on the East side of the High Bridge road, and running by and with said road, on the land of the said Davis and Holloway until it reaches the divisional line between the States of Delaware and Maryland." It appears, however, that the line of the road *by and with which* the ditch was to run, passed, for the distance of about seventy yards through the lands of a man named Lewis, before it reached the line between Delaware and Maryland; and this fact was relied on by the counsel of the appellant as exonerating him from liability in this suit for having cut the ditch in the manner alleged in the *narr.* All that the appellee and Holloway intended to grant or could grant was the privilege of the water course over their own lands. They could not grant any such right on Lewis' land, and therefore the description of the water-course as running " by and with the road," must be controlled by the other description of it as being " *on the land of said Davis and Holloway.*" The proper location of said water course was therefore *on the land of the appellee and Holloway*, on the East side of, and as near to and nearly in the course of the High Bridge road as possible. But at all events the ditch, by the agreement of the parties, was to be located on the lands of the appellee and Holloway, and the appellant was bound to cut it upon their lands, if he attempted to cut it at all under the agreement.

The fact that the appellee and Holloway never granted the water-course to the appellant by deed, was relied upon as a bar to this action. If he entered upon the land of the appellee under the agreement and commenced cutting the ditch, he

Jacobs vs. Davis,

was obliged to cut it in the mode and direction prescribed in the agreement, and if he neglected or failed to cut it as therein required, he cannot be permitted, when sued for breach of his covenant, to say that he is not liable because he had no deed from the parties. It was his duty to have the deed prepared and presented to them for execution, if he deemed it necessary to have one before entering upon their lands for the purpose of cutting the ditch. It was further contended that Davis, the appellee, had no title to the land through which the ditch was to be cut, and that he made false representations as to his being the owner of said land by which the appellant was induced to enter into the agreement. The only representations, of which there is any proof, were made at the time the agreement was executed. At that time the appellee held a life estate in the land, as tenant by the curtesy, and at the time of the trial below he was the owner of it in fee; so that neither of these defences can avail the appellant. If the appellant violated his covenant whereby the appellee suffered injury, the jury could give "such damages as they might find to be the natural and necessary result of the act or acts of the defendant which, they might find so justly complained of by the plaintiff in his *narr.*" *Cook vs. England*, 27 *Md.*, 34.

This being an action of covenant, and the covenant sued on being such that there can be but one breach, so far as draining the Gum land and cutting the ditch are concerned, and but one recovery, the jury, in assessing the damages are not limited to the time of the institution of the suit, but are at liberty to allow damages for such permanent injury to the appellee as they may find from the evidence he has sustained. *Winston vs. Stokes*, 3 *Jones* (*N. C.*) *L. Rep.*, 285-7. Assuming, for the purposes of this case, that the demurrer was filed in time and in accordance with the rules of the Court below, under the construction of the agreement and principles of law hereinbefore stated, we have no hesitation in declaring that it was properly overruled. That a demurrer is a proper mode

of taking advantage of the non-joinder of a party plaintiff, when that fact is apparent in the *narr.* is well settled in this State. *Armstrong vs. Robinson,* 5 *G. & J.,* 421 ; *Wallis vs. Dilley,* 7 *Md.,* 250 ; *Kent vs. Holliday,* 17 *Md.,* 392 ; 1 *Chitt. Plead.,* 46. It also follows that the first, second, third and fourth instructions, with the qualifications thereto, and the fifth, sixth and tenth, asked by the appellee were properly granted, and the third, fourth, sixth, seventh and eighth asked by the appellant were properly rejected. The second instruction asked by the appellant had been substantially granted in those given at the appellee's instance, and its refusal furnishes no cause for reversal We therefore concur in the instructions granted by the Court below, as well as in its rejection of the above mentioned prayers of the appellant.

During the progress of the trial below four exceptions were taken by the appellant to the rulings of the Court, by which, evidence offered by him, was excluded. The evidence offered in the first exception was not admissible. The proceedings of commissioners appointed to locate roads and ditches upon the lands of which Levin Carey died seized, and the location of a particular ditch by them and the approval thereof by the appellee was not admissible evidence to show " the general tendencies of the water from a certain part of the swamp," inasmuch as it did not tend to prove any issue in the case and because it may have been, that the particular ditch therein mentioned, was located for the purpose of carrying off the water from a certain part of the swamp, in a direction different from that in which it would have naturally flowed.

The second exception was taken to the exclusion of evidence offered to prove that no *grant* of the water-course had been executed to the appellant by the appellee, Holloway or Lewis, through the lands of Lewis. We have before shown that the water-course described in the covenant was one on the lands of the appellee and Holloway respectively, and that the appellant was compelled by the agreement between the

parties to cut the ditch upon their lands. The evidence that the appellant had received no grant of the water-course through Lewis' land was therefore inadmissible.

The evidence in the third exception, which was offered and rejected, was also inadmissible. It did not come within the rule which requires written and printed instruments and inscriptions to be produced as the best evidence. The rails and shingles, alleged to have been injured by water, could not, under any rule of evidence, have been received as *testimony* to prove or disprove the fact of injury to them. That could only be done by witnesses who had examined them.

The evidence offered and rejected in the fourth exception was totally irrelevant and was properly rejected. The agreement between the parties gave the right to the appellant to cut the ditch of sufficient width and depth to suit his purposes; but his covenant, at the same time, bound him to cut it in a particular manner so as to carry off the water as it was brought down from above, and any evidence to prove for what purpose the lands of the appellant which were to be drained, and the lands adjoining, were most valuable, was irrelevant, immaterial and did not tend to prove any issue in the case.

We find no error in the rulings of the Court below and its judgment must be affirmed.

*Judgment affirmed.*

(Decided 24th February, 1871.)