LEVI FURSTENBURG *vs.* ASBURY F. FAWSETT.

*Action of Covenant for Breach of Contract—Construction of the Contract—Measure of damages.*

By contract under seal, dated 13th Nov., 1879, A. F. F. agreed to sell all the wood on his farms in Back River Neck to L. F., for seventy-five cents per cord standing, to mark out such grounds and on such farms as he wanted the wood cut from, and to give L. F. full coal privileges; and L. F. on his part agreed to take all kinds of wood that will do for charcoal, and to leave no wood standing at all that can be made into charcoal; to pay for it as soon as taken from the choppers, or as soon as it is corded and measured, and to receive and haul away from said farms all the wood as above specified, within two years from the date of this agreement. In an action of covenant brought by A. F. F. against L. F. for a breach of this contract, it was HELD :

1st. That the contract constituted a sale by the owner of the land, of the growing wood or timber upon it, at a certain sum per cord, the purchaser agreeing to cut and haul away all of it that was suitable for charcoal, and to pay the stipulated price therefor ; the same to be done within two years.

2nd. That it did not follow because of the failure of the purchaser to cut down and carry away *all* such wood, or because he left some of the wood standing, that the *land itself* was thereby permanently *injured* or deteriorated in value.

3rd. That if the plaintiff immediately after default made, had proceeded as he might have done, to cut, haul and sell this wood in the market at the defendant's risk, he would have been entitled to recover the difference, if any, between what he would have realized from such sale, after deducting the cost of cutting and hauling, and the contract price.

4th. That having failed to do this, and the wood remaining standing on the land, he could only recover the difference in value of the wood thus left on the land, between the rate of seventy-five cents per cord, and its market value as it thus stood, and if it were of equal or greater value in the whole than seventy-five cents per cord, then he could recover no damages whatever on this account.

5th. That as one of the inducements on the part of the plaintiff to enter into the contract, and one of the objects in the contemplation of both parties to it, was to have the land cleared for cultivation within two years, and a failure to clear it was to deprive the plaintiff of the use of it, for a time at least, as arable or tillable land, he was entitled for this deprivation, to such damages, if any, as the jury upon proper evidence should find he actually sustained thereby.

6th. That damages on this account, however, could only be recovered for such reasonable time after the expiration of the two years as would have enabled the plaintiff to clear up his land by cutting and hauling away the wood thus left uncut by the defendant.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered two prayers, which are sufficiently set out in the opinion of this Court.

The defendant offered five prayers, the first, third and fourth of which are omitted, having been conceded. The second and fifth are as follows:

2. That if the jury shall find, from the evidence, that the defendant did not cut all the wood from such portions of the land as were marked off by the defendant to be cut, then the most which the plaintiff can recover under the evidence in this case, is the difference in value of the wood

left on the land, between the rate of seventy-five cents a cord and the present market value of said wood; and if the jury shall find, that what is left on the portion of land which was marked off to be cut, is of equal value or of greater value in the whole than seventy-five cents per cord, then their verdict must be for the defendant.

5. The defendant prays the Court to instruct the jury, that, under the evidence in this cause, they cannot, in estimating the damages, take into consideration the question, whether the land from which the plaintiff agreed to cut the wood, by the written contract offered in evidence, was less valuable with the trees which the defendant left standing upon said land, and which they may find he ought to have cut, under said contract, than it would be if said trees had all been cut; because there is no evidence in the cause showing that said land, in the condition in which it was left by the defendant, is less valuable than it would be if all the trees, required by the said contract to be cut, had been cut.

The Court (GILMOR, J.,) granted the two prayers of the plaintiff, and also the first, third, and fourth prayers of the defendant, which were conceded by the plaintiff, and rejected the second and fifth prayers of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*Bernard Carter*, for the appellant.

*J. Alexander Preston*, for the appellee.

MILLER, J., delivered the opinion of the Court.

As to what damages are recoverable for the breach of a contract, we must, in a case like the present, be governed

by the rule recently approved by this Court in *Camden Consolidated Oil Company vs. Schlens & Co.*, 59 *Md.*, 45. In that case we adopted the law as laid down by ALDERSON, B., in delivering the judgment of the Court in the leading case of *Hadley vs. Baxendale*, 9 *Exch.*, 341, thus: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either as arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." And in the same connection reference was made to the case of *Abbott vs. Gatch*, 13 *Md.*, 333, where the rule was thus stated: "Such damages as are incidental to and caused by the breach, and may be said to flow reasonably and naturally from such breach, and are not accidental or contingent losses, will be allowed, and whether they are of the one character or the other must depend on the nature of the transaction."

The contract in the present case was under seal, bears date the 13th of November, 1879, and by it Fawsett, on his part, agreed to sell all the wood on his farms in Back River Neck, to Furstenburg, for seventy-five cents per cord standing, to mark out such grounds and on such farms as he wanted the wood cut from, and to give Furstenburg full coal privileges; and Furstenburg, on his part, agreed to take all kinds of wood that will do for charcoal, and to leave no wood standing at all that can be made into charcoal, to pay for it as soon as taken from the choppers, or as soon as it is corded and measured, and to receive and haul away from said farms all the wood as above specified within two years from the date of this agreement.

In February, 1882, Fawsett sued Furstenburg in covenant for a breach of this contract. The declaration con-

tains no special statement of damages, but after setting out the contract, simply alleges, as a breach, that the defendant hath not paid to the plaintiff seventy-five cents per cord for all the wood on the land suitable to make charcoal, and hath not hauled away said wood, but has left the same standing, and refuses to cut, haul and pay for the same, contrary to his agreement, whereby the plaintiff has sustained great damage and loss, and he claims $5000.

The trial resulted in a verdict in favor of the plaintiff for $500 damages. The Court granted the two prayers offered by the plaintiff and refused to grant the second and fifth prayers offered by the defendant. To this ruling the latter excepted, and that is the only exception in the case.

By the granting of the two prayers offered by the plaintiff (and they were the only ones he presented) the jury were instructed in effect, that if they found, from the evidence, that the defendant did not cut and haul away certain of the growing timber mentioned in this contract suitable for making charcoal, and that by his neglect and refusal to cut and haul away the same, the plaintiff's *property was injured and rendered less valuable,* then he is entitled to recover in this action, and in assessing damages they are not limited to the time of the institution of the suit, but are at liberty to allow damages for such *permanent injury to the land* as they may find from the evidence he has sustained, if any.

In our opinion these instructions are founded upon a misconception of the true character of this contract, which is simply a sale by the owner of the land of the growing wood or timber upon it, at a certain sum per cord, the purchaser agreeing to cut and haul away all of it that was suitable for charcoal, and to pay the stipulated price therefor; and this he was to do within two years. The instructions complained of assume that from the failure of

the purchaser to cut down and carry away *all* such wood, or because he left some of it still standing, the jury were at liberty to find that the *land itself* was thereby permanently *injured* or deteriorated in *value.* Now it seems to us very clear not only that no such consequence would, according to the usual course of things, result from such default, but that such a result could not, in the nature of things, possibly follow. The quality of the soil could not be affected by the wood or timber left standing, and no foreign or deleterious substance was thereby brought upon the land. The most that can be said is that by this breach the owner may have been deprived, for a time, of the *use* of his land for tillage and cultivation, or, in other words, that he might have enjoyed such use of it at an earlier period if the contract had not been thus broken.

It was said in argument that the law of these instructions was taken from the decision of this Court in *Jacobs vs. Davis,* 34 *Md.,* 204. But the contract in that case was very different. It provided for the construction of a ditch for draining lands. By one of its stipulations the defendant agreed to begin cutting the ditch at a certain point, "and not to cut it above, so as to throw the water down until it could be taken off by the ditch below;" and one of the breaches assigned was that he did, in fact, so cut it as to throw the water down before it could be taken off by the ditch below. The natural consequence of this (as was abundantly shown by the evidence) was to cause the water to overflow and flood the plaintiff's lands, and thereby permanently injuring them. In that state of case this Court affirmed the ruling of the Court below in granting the plaintiff's sixth prayer, by which the jury were instructed, in substance, that if they found for the plaintiff he was entitled to such damages as they may find to be the natural and necessary result of the acts complained of, and in order to assess the damages they may consider what was the natural and probable result of such acts, and

Furstenburg *vs.* ·Fawsett.

are not confined to the damages which may have accrued prior to the suit, but may give such damages as will compensate him for any permanent injury he may have sustained by such breach of the covenant. It is manifest that while the law, as thus stated, was correctly applied in that case it has no application to the case now before us. The difference between them is too wide and obvious to need comment. We are therefore satisfied the Court below fell into error in granting these instructions.

But even if we are wrong in this, still there was error in not granting the defendant's fifth prayer, which asserts that there is no evidence in the case showing that the land, in the condition in which it was left by the defendant, is less valuable than it would be if all the trees required by the contract to be cut had been cut. We have carefully examined the record, and can find no such evidence. Not only does the plaintiff himself, as a witness, fail to prove any such injury, but Mr. Touchstone, the only other witness on his side, whose testimony is set out in the record, on being asked, how has the leaving of this scattered wood standing on the land affected the land? replied, "not in any way that I know of, only the wood has been left there behind."

It follows, from what has been said, that the judgment must be reversed and a new trial granted, and this requires us to lay down the measure of damages, in case the jury should again find for the plaintiff. In many instances Courts have been embarrassed by such questions, but in the present case there would seem to be but little difficulty. If the plaintiff had broken the contract by refusing to permit the defendant to carry it out, it is clear the latter would have been entitled to recover as damages the difference between the seventy-five cents per cord and what he could have sold the wood or the charcoal for in the market, after deducting the cost of cutting, hauling and converting it into charcoal, *i. e.*, the profit he could

have made if he had been allowed to execute the contract. *Masterton & Smith vs. Mayor, &c., of Brooklyn,* 7 *Hill,* 61; *Eckenrode vs. Chemical Co. of Canton,* 55 *Md.,* 51. But upon the assumption that the defendant has made default by leaving some of the wood uncut which the contract required him to cut, carry away, and pay for, what damages is the plaintiff entitled to recover? By the contract he was entitled to seventy-five cents per cord for this wood as it stood upon the land. If, immediately after default made, he had proceeded, as he might have done, to cut, haul and sell this wood in the market at the defendant's risk, he would have been entitled to recover the difference, if any, between what he would have realized from such sale, after deducting the cost of cutting and hauling, and the contract price. But, as we gather from the record, this was not done, and the wood still remains standing on the land, or did so remain when the case was tried in the Court below. In this condition of things we are clearly of opinion he can only recover the difference in value of the wood thus left on the land, between the rate of seventy-five cents per cord, and its present market value as it thus stands, and if it is of equal or greater value in the whole than seventy-five cents per cord, then he can recover no damages whatever on this account. There is, however, another element of damage which must not be overlooked. It is safe to say that one of the inducements on the part of the plaintiff to enter into this contract, and that one of the objects in the contemplation of both parties to it, was to have the land *cleared* for cultivation within the two years. The necessary result of a failure thus to clear it was to deprive the plaintiff of the use of it, for a time at least, as arable or tillable land, and for such deprivation he is clearly entitled to such damages, if any, as the jury, upon proper evidence, shall find he has actually sustained thereby. But in estimating these damages regard must be had to the well settled rule, that where a party is en-

titled to the benefit of a contract, and can save himself from a loss arising from a breach of it, at a trifling expense and with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent. *Warren vs. Stoddart*, 15 *Otto*, 224. It would be unjust to charge the defendant with damages under this head, for just so long a time as the plaintiff may have chosen to leave his land uncleared. Damages on this account can, therefore, be recovered only for such reasonable time after the expiration of the two years as would have enabled the plaintiff to clear up his land by cutting and hauling away the wood thus left uncut by the defendant. From these views it follows that, while it may be true that the defendant's second prayer ought to have been granted as the case was presented at the last trial, it will be error to grant it upon the new trial, if a case is made out which will enable the plaintiff to claim damages under this head.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th January, 1884.)