THE MARYLAND ICE COMPANY *vs*. THE ARCTIC ICE
MACHINE MANUFACTURING COMPANY.    THE ARCTIC
ICE MACHINE MANUFACTURING COMPANY *vs*. THE
MARYLAND ICE COMPANY.

*Breach of Contract—Damages—Rental value.*

The purchaser of an ice machine is entitled to damages for delay
in furnishing it, upon the basis of the rental value of such ma-
chine for the year in which it was to be supplied, instead of
for the average year, where there is an exceptional scarcity of
ice during such year, by reason of which the rental value is
greater, and the seller was fully aware of such scarcity.

The fair rental value of the machines for the period of time they
were in use before their acceptance, proper to be deducted
from the total rental value for the use of the same, cannot be
estimated on the actual number of days they were in use, it
appearing they were not worked the whole of each day; but
the total product during that time divided by the full capacity
of the machines for a day, will show the number of days to
be reckoned.

A wooden platform between the tanks of the ice machines, neces-
sary for their proper working, and without which the expansion
valves could not be reached, was part of the machines, and
should have been erected by the seller.

The purchaser of ice machines should not be allowed as damages
for defective construction, an item of graphite paint where its
use on the condensers had a tendency to prevent the quick con-
densation of steam, and thereby destroy to some extent the
efficiency of the machines.

The purchaser of ice machines is entitled to be allowed as dam-
ages for defective construction, an item for hoists and chains
to hoist the ice out of the tanks, where they are essential to
the advantageous working of the machines, and the original
ones furnished were very inferior.

CROSS APPEALS from the Circuit Court of Baltimore City.

These cross appeals were taken from a decree of the
Court below (WICKES, J.), determining the amount to be

paid by the Maryland Ice Company to the Arctic Ice Machine Manufacturing Company. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*Randolph Barton,* and *Skipwith Wilmer,*for the Maryland Ice Company.

*Frank Gosnell,* (with whom was *Thomas M. Lanahan,* on the brief,) for the Arctic Ice Machine Manufacturing Company.

PAGE, J., delivered the opinion of the Court.

The facts of this case are stated in the opinion of the Court on the former appeal. (77 Md., 202.) We then held, that the Maryland Ice Company was entitled to recoup out of the balance due to the Arctic Company, the amount of damages sustained by the Maryland Company by reason of the failure of the Arctic Company to erect the machines according to the provisions of the contract of March 15th, 1890; that by this contract two of the machines ought to have been completed and in operation on June 1st, 1890, and the third on the 1st of August; but none of them were ready for final acceptance until the 8th of November, though they were in partial operation considerably prior to that day; and that the damages which the Maryland Ice Company is entitled to recover for this failure to complete the machines within the time specified by the contract, " are, the *rental values* of *like machines* of equal capacity from the dates they ought to have been in operation to the time of acceptance," from which must be deducted " the fair rental value of the machines for the portion of that period that they were actually in use

by or for the Maryland Company." And it was also determined that the Maryland Company could recoup for any defective workmanship, material, and construction (if any be proved), such sum as would be the cost of repairing or replacing the defective portions of the machines, so as to make them what they should have been under the contract. The cause was thereupon remanded to the Circuit Court, to determine the damages upon the principles above stated, and it is from the decree determining these matters that this appeal is taken. So that the first question presented by this appeal is, what, under the evidence taken, is the rental value of the machines for the period, as to two of the machines, from the first day of June, and as to the third machine from the first day of August to the eighth day of November, and what deduction is to be made from the amount so ascertained for the use of the machines during the period they were in operation by or for the use of the Maryland Company prior to the last mentioned day.

It may be stated in the outset that under the decision in the former appeal no rule for the ascertainment of the rental value can be maintained, which is based upon the estimated profits that could have been made out of the business. These, the Court say, " are too speculative and contingent to form a basis for calculating damages." And, inasmuch as we have said, that the measure of damages is " the rental values of like machines of equal capacity," &c., we are not at liberty to take into the account the cost of the real estate and buildings which were provided to be used in connection with the machines. So that the sole question now presented is, what is the proper method of ascertaining the rental value of these machines under all the circumstances disclosed by the evidence in the case.

It is a fact that cannot be controverted, that though the annual hire of an article of personal property for a series of years may be estimated upon an average at a

given sum, yet, by reason of the existence of peculiar circumstances, an unusual demand for the use for which it is available may sometimes arise, and when such exists, there will be an increase in the sum for which it can be hired. The term "rental value," is said in *Wood vs. State*, 66 *Md.*, 67, "to be the value of the use of the same." If, therefore, the cost of working the machine remain the same, its rental value must necessarily vary from time to time as it is more or less available for existing needs. For instance, the summer of 1890 was preceded by a winter so mild that but little natural ice was produced, and in consequence, the market of Baltimore, being almost bare of this commodity, was dependent for its supply either upon the artificial product or ice transported from points far north, with freights that largely increased its cost. In fact, during the summer of that year the price of ice in that market, rose to a figure at least double that which is usual in ordinary seasons. If the hire of an article depends not only upon its cost, but upon its capacity to supply an existing demand, it is not unreasonable to conclude that an ice machine in the city of Baltimore in the summer of 1890, was more valuable than in an ordinary year, and its rental value correspondingly greater. And this would be so, not upon the basis of speculative profits that might possibly be made from its use, but because as a business proposition, the peculiar conditions of the market had created an unusual demand for such machines, growing out of this capacity to furnish, on profitable terms, a commodity of such high price, and so essential to the health, comfort, and convenience of the people. Assuming then, that the rental value of these machines may not always remain the same, what ought to be the rule in a case like this? Or in other words, is the Maryland Company to be allowed the rental value as it may be found to be in the summer of 1890, or the rental value for the average year? There can be no question that the damages which

a plaintiff is entitled to recover for a breach of contract is such as "may fairly and reasonably be considered as arising naturally, i. e., according to the usual course of things from such breach of contract." *Balto. & Ohio R. R. Co. vs. Pumphrey*, 59 *Md.*, 400 ; *Furstenburg vs. Fawsett*, 61 *Md.*, 187. And, therefore, in ordinary cases, a fair average rent is all the plaintiff can demand. *Middlekauf vs. Smith*, 1 *Md.*, 342. But if the contract is made under special circumstances, and these are known to both parties, "the damages which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under those special circumstances so known or communicated." This was the doctrine laid down in *Hadley vs. Baxendale*, 9 *Exch.*, 341, and it has been cited approvingly by this Court, and applied in several cases, notably in the *United States Telegraph Co. vs. Gildersleve*, 29 *Md.*, 233; *Hydraulic Engineering Co. vs. McHaffie*, 4 *Q. B. Div.*, 670; *Western Union Tel. Co. vs. Hall*, 124 *U. S.*, 444 ; *Novelty Iron Works vs. Capital City Oatmeal Co.*, 55 *N. W. R.*, 518. It must be assumed that the agents of the Arctic Company, at the time of the making the contract, were fully aware of the extraordinary circumstances of there being a scarcity of natural ice. That the preceding winter had been so mild that but little ice had been made in the United States was a fact presumably within the knowledge of every reasonably intelligent person, and they therefore knew, or might have known, that ice machines, ready for operation during the approaching summer in the city of Baltimore, would be invested with a value exceeding that of an ordinary season. Both parties, therefore, must, at that time have contemplated that such injury would ensue from a breach of the contract, in not completing the machines within the time specified, as would follow under these special circumstances. *Monongahela Navigation Co. vs. United States*, 148 *U. S.*, 328. In this view of

the matter, the question resolves itself into this: For what sum could the Maryland Company, at the particular time and place, have hired similar machines? And in the event of it being impossible to determine this by comparison with the amounts actually obtained for the hire of like machines at the same time and place, what was the value of their use in the city of Baltimore during the particular period, when ice was exceptionally scarce, and in consequence abnormally high in price? Can such a sum be properly ascertained without fairly considering the prospect for the profitable use of the machines? Profits " are contributed to by all, and not one only, of the various elements which combine to produce them * * *; all the different kinds of work and labor which enter into 'the manufacture of an article form the source and basis of profit "; and moreover, " the possible breakage, loss of time, expenses of general supervision, natural wear and tear of capital," and other matters, all tend to show that profits of a business, such as this, are too uncertain, speculative and contingent, to furnish the true rule of damages. (*Woods vs. State, supra.*) But yet we think the condition of the particular business in the place where the machine is located, the prospect of remuneration for its employment, as well as its cost, are, when the rental value cannot be determined by comparison, all elements to be considered in ascertaining the true value of the use. Such a rule is not only just, but it offends no rule laid down in the adjudicated cases for fixing the measure of damages.

The instances of the hiring of ice machines, furnished by the proof, are not of such a character as to enable us to arrive at the rental value of those with which we are concerned by comparison. What a machine, in 1886 or 1891 in Alabama or Florida, could have been hired for, cannot enlighten us as to the rental value of a machine in Baltimore in 1890. Nor are the charges for the

Crystal Company's machine, nor for that in the Paca street warehouse, fair tests. We are therefore compelled to resort to means other than that by comparison. If an average rental value could be adopted as the full measure, after a careful examination of the testimony, we should adopt the amount fixed by the Circuit Court; that is to say, twelve per cent. on the cost of the machines, and allow three-fifths of that amount. But as we have said, it is fair to assume that by reason of the peculiar condition of the ice market during the year 1890, there existed the prospect of larger returns than usual from the use of such machines, and, as a consequence thereof, the value of its use would be greater. It is not reasonable to suppose that in such a season the Maryland Ice Company could have hired a machine at rates prevailing in an average year. So far as the particular business was concerned, it was a peculiar period, and special rates would have been exacted. The great preponderance of opinion, expressed by the business men who have testified in this cause, fully supports this statement. The evidence shows that in the summer of 1890, there was a scarcity of ice in the city of Baltimore, to such an extent that its price, which in ordinary years, is from two and a half to three dollars per ton, rose by the first of June to at least six dollars per ton. If, therefore, the fair rental of these machines in an ordinary year would be twelve per centum on their cost, we think it not unreasonable to suppose that at a time when the price of the commodity it produced had increased one hundred per cent., the value of the use of them would be enhanced in an equal proportion. For these reasons, we are of the opinion the rental value was estimated at too low a figure by the learned Judge who decided this cause below, and should have been double the amount allowed; that is, should have been $15,408. But for the concessions as stated in the opinion of the Court below, that the ice manufactured during the period of delay, less the cost of manufacturing it, is the .

property of the Arctic Company, we should be compelled to hold there was error in the method of ascertaining the deduction to be made from the total rental value for the use of the machines before they were accepted. Upon this point the language of this Court on the former appeal was: "There must be deducted from the total rental value the fair rental value of the machines for the portion of the period they were in actual use by or for the Maryland Company." It is, therefore, the *rental* value for that period which is to be deducted from the total value. The account filed as an exhibit shows that the machines were worked prior to the 8th day of November, *on* seventy-seven days, and produced 2914½ tons of ice. While it is proper to calculate the rent for this period at the same percentage, it is not equitable to charge the Maryland Company with the whole of that time, since the machines were not worked the whole of each day. On few days, if any, was the full quantity of ice, of which the machines were capable, produced. It is fair to both parties to count each one hundred and fifty tons as a day's work; and by this rule the number of days can be easily ascertained. The amount thus determined being deducted from the total rental value of $15,408, would leave, but for the concession referred to, the proper sum to be allowed to the Maryland Company, with interest thereon from the eighth day of November.

2nd. The second question presented by the record is as to the several allowances claimed by the Maryland Company for defective workmanship, material and construction, &c. By the understanding of the counsel, and the concessions made at the hearing, but few items are submitted to us, and these we will now proceed to consider. The first item is of $225 for the construction of a wooden platform between the tanks, so that the expansion valves can be reached. We do not think this platform can be regarded as a part of the building, nor as having been placed in its position for the purpose of lev-

Maryland Ice Co. *vs.* Arctic Ice Machine Manufacturing Co.

elling the ground. It appears to have been necessary for the proper working of the machines; without it, the expansion valves could not be reached. And, if so, it was part of the machine, and should have been put there by the Arctic Company. It should, therefore, have been allowed. The next item, for graphite paint, was properly rejected; its use on the condensers had a tendency to prevent the quick condensation of steam, and thereby destroy to some extent the efficiency of the machine.

As to the item of $290.76, for hoists and chains, to hoist the ice out of the tanks, these appear to be essential to the advantageous working of the machines. Hammond states that " the original ones furnished were very inferior, indeed, many of them breaking down * * * even in 1890." And, if this was so, under the decision on the former appeal, the Maryland Company is entitled to be reimbursed for the cost of replacing them. We do not see how the understanding of the Arctic Company with the Yale & Towne Company can affect the matter. This item, we think, should have been allowed.

The item of $33.07 for repairs unlocated was properly rejected; also the item of $1278.71.

We express no opinion as to whether the Arctic Company will be entitled to be subrogated to the rights of the first mortgage bondholders in the event of a balance remaining due them after their remedies against the Maryland Company have been exhausted. This question only arises when the proceeds of the sale of the machines have been applied, and inasmuch as the case, in view of what we have said, must be remanded, it can be considered by the Court hereafter.

> *Decree reversed, with costs, and cause remanded for a new decree in conformity with this opinion.*

(Decided 14th March, 1894.)

BRYAN, J., dissented.