## WESTERN UNION TELEGRAPH COMPANY *v.* HALL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Argued November 30, 1887. — Decided January 30, 1888.

The damages to be recovered in an action against a telegraph company for negligent delay in transmitting a message respecting a contract for the purchase or sale of property are, by analogy with the settled rules in actions between parties to such contracts, only such as the parties must or would have contemplated in making the contract, and such as naturally flow from the breach of its performance, and are ordinarily measured by actual losses based upon changes in the market values of the property:

And, accordingly, where such an action was brought to recover damages caused by a delay in the transmission of a message directing the person to whom it was addressed to purchase property in the open market on behalf of the sender, by means of which delay that person was prevented from making the purchase on the day on which it was sent, and it appearing that he did not make the purchase on the following day in consequence of an immediate large advance in price, nor at any subsequent day; and it not appearing, further, either that the order to purchase was given by the sender in the expectation of profits by an immediate resale, or that he could have sold at a profit on any subsequent day if he had bought: *Held*, that the only damage for which he was entitled to recover was the cost of transmitting the delayed message.

THE case as stated by the court was as follows:

This was an action at law brought in the Circuit Court of Polk County, Iowa, by George F. Hall against the Western Union Telegraph Company, and by the defendant removed, on the ground of citizenship, to the Circuit Court of the United States for the Southern District of Iowa. The action was for the recovery of damages for alleged negligence on the part of the defendant in delaying the delivery of a telegraphic message received by it from the plaintiff at Des Moines, in the State of Iowa, to be delivered to the party to whom it was addressed at Oil City, in the State of Pennsylvania. The cause was submitted to the court, a jury having been waived in writing. A judgment was rendered in favor of the plaintiff for the sum of $1800. The cause is brought here by a writ of error upon a certificate of a division of opinion between the judges upon certain questions which arose during the course of the trial, which questions, together with the facts necessary for their determination, are certified to us as follows:

" The court finds the following as the material facts in the case.

" The plaintiff at eight oclock A.M., November 9th, 1882, furnished to the defendant, a telegraph company engaged in the business of receiving and sending telegraph despatches at its office in Des Moines, Iowa, a message in the following form, and plainly written on one of the usual blank forms furnished by the company:

" ' Form No. 2.

" ' The Western Union Telegraph Company. ·

" ' All messages taken by this company are subject to the following terms. To guard against mistakes or delays the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or non-delivery of any

unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of message to any point on the lines of this company can be insured by contract in writing, stating agreed amount of risk and payment of premium thereon, at following rates, in addition to the usual charge for repeated messages, viz.: one per cent for any distance not exceeding 1000 miles, and two per cent for any greater distance. No employé of the company is authorized to vary the foregoing. No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices, and if a message is sent to such office by one of the company's messengers he acts for that purpose as the agent of the sender. Messages will be delivered free within the established free-delivery limits of the terminal office; for delivery at a greater distance a special charge will be made to cover the cost of such delivery. The company will not be liable for damages in any case where the claim is not presented in writing in sixty days after sending the message.

    " 'NORVIN GREEN, *President.*

    " 'THOMAS T. ECKERT, *General Manager.*

  " 'Receiver's No. —. Time filed, 8 A.M. — check.

  " 'Send the following message, subject to the above terms, which are agreed to.

        " '11 / 9, 1882.

  " 'To Chas. T. Hall, Exchange, Oil City, Pa.:

  " 'Buy ten thousand if you think it safe. Wire me.

        " 'GEO. F. HALL.

  " 'Read the notice and agreement at the top. ☞'

"The same being furnished and received by the defendant for immediate transmissal to Charles T. Hall, at Oil City, Pa., the usual and ordinary charge therefor being paid by plaintiff. Through the negligence and want of ordinary care on part of defendant's employé at Des Moines the message so received was forwarded to Oil City, Pa., in an imperfect condition, in this, that the name of the party to whom it was addressed was wholly omitted. The message was received at Oil City, Pa., at 11 o'clock A.M., November 9th.

"The operator of defendant at Oil City sent the message to the building known as the Exchange, which was used by a board of trade engaged in the business of buying and selling petroleum, the hours of business extending from 10 A.M. until 4 P.M. The officers of the exchange or board of trade refused to receive the despatch in question, and thereupon the operator at Oil City telegraphed to Des Moines for the purpose of ascertaining to whom the despatch should be delivered, and thus ascertaining for whom it was intended, delivered it to Charles T. Hall at 6 o'clock P.M., November 9th, 1882. Had it not been for the error in sending the despatch without including the name of Charles T. Hall it would have been delivered to him at Oil City at 11.30 A.M., November 9th, 1882. The meaning of the despatch was to direct Charles T. Hall to buy ten thousand barrels of petroleum if in his judgment it was best to do so. Had the despatch upon its first receipt at Oil City, Pa., been promptly delivered to Charles T. Hall he would, by 12 M. of November 9th have purchased ten thousand barrels of petroleum at the then market price of $1.17 per barrel for the plaintiff. When the despatch was delivered to Charles T. Hall the exchange had been closed for that day, so that said Hall could not then purchase the petroleum ordered by plaintiff. At the opening of the board the next day the price had advanced to $1.35 per barrel, at which rate said Charles T. Hall did not deem it advisable to make the purchase, and hence did not do so.

"It is not disclosed in the evidence whether the price of petroleum has advanced or receded since that date, November 10th, 1882. The operators acting for the defendant had no

other knowledge of the meaning or purpose of the despatch than is to be gathered from the message itself.

"The plaintiff brought this action to recover damages for the failure to properly and promptly transmit the despatch in question in the Circuit Court of Polk County, Iowa, the original notice being served upon the defendant on the 22d day of December, 1882. Under the statutes of Iowa, actions in the courts of that State are commenced by serving upon the defendant an original notice, which is signed by the plaintiff or his attorney, and is addressed to the defendant. No summons or writ under the seal of the court is issued. The notice in this case was addressed to the defendant, and, after entitling the cause, proceeded as follows: 'You are hereby notified that on or before the 22d day of December, 1882, the petition of plaintiff in the above entitled cause will be filed in the office of the clerk of the Circuit Court of the State of Iowa in and for Polk County, Iowa, claiming of you the sum of fifteen hundred dollars, as money justly due from you as a loss and damage suffered by the plaintiff by reason of your negligent failure to send and deliver a telegram, as set forth in said petition, on November 9th, 1882, from plaintiff to Chas. T. Hall, at Oil City, Pa., and that, unless you appear thereto and defend before noon of the second day of the January term, A.D. 1883, of the said court, which will commence on the 2d day of January, A.D. 1883, default will be entered against you and judgment rendered thereon. Crom. Bowen and Whiting S. Clark, attorneys for plaintiff.'

"No other presentation of the claim was made by plaintiff. Upon the foregoing facts it is the opinion of the presiding judge that the law is with the plaintiff, and that he is entitled to judgment in the sum of eighteen hundred dollars, and it is so ordered as the judgment of the court.

"The judges holding said Circuit Court, and before whom said cause was tried, hereby certify that on said trial of said cause they were divided in opinion and were unable to agree upon the following questions of law arising on said trial and necessary to be determined in order to finally determine said cause, to wit:

"1st. Can the defendant, having in the usual line of its business accepted said message from plaintiff for transmissal to the party named therein at Oil City, Pa., and having received its usual charge for such service, be heard to say that it was not bound to exercise ordinary care in transmitting the same, and that it is only liable to the plaintiff in damages in case of gross negligence on its part?

"2d. Under the contract legally existing between the plaintiff and defendant, whereby the latter assumed the duty of forwarding said message, the same being an unrepeated message, was the defendant bound only to the exercise of slight care or to the exercise of ordinary care?

"3d. Under the contract legally existing between plaintiff and defendant, whereby the defendant assumed the duty of forwarding said message, the same being an unrepeated message, can the defendant, in any event, be held to respond in damages beyond the amount paid to the company for forwarding the said despatch?

"4th. Admitting the liability of defendant to respond in damages beyond the sum paid for forwarding the message, what rule is to govern in ascertaining the same? Are the damages merely nominal, or is plaintiff entitled to the difference in value of the oil at the time it would have been purchased for plaintiff had the message been properly forwarded and the value at the time it could have been purchased after the actual delivery of the message to Charles T. Hall, at Oil City, Pa., it being admitted that he did not make the purchase for the reason that, in his judgment, the price on the morning of November 10th, 1882, was too high to justify purchasing?

"5th. Was the message so obscure and uncertain on its face that the defendant should not be held to know that it pertained to a transaction involving loss and damage if the message was not properly and promptly forwarded?

"6th. Was the service of the original notice in this cause a sufficient compliance with the clause in the contract providing that 'the company will not be liable for damages in any case where the claim is not presented in writing within sixty days

after sending the message'? If not, is the right of recovery barred by the failure to present the claim in writing?"

*Mr. Wager Swayne* for plaintiff in error, (*Mr. Rush Taggart* was with him on the brief,) to the point decided by the court, cited in.support of the proposition that the only recovery which could be sustained was for the amount of tolls paid: *Express Co.* v. *Caldwell*, 21 Wall. 264; *Hart* v. *Pennsylvania Railroad Co.*, 112 U. S. 331; *Tyler* v. *Western Union Tel. Co.*, 60 Illinois, 421; *Passmore* v. *Western Union Tel. Co.*, 78 Penn. St. 238; *Aiken* v. *Telegraph Co.*, 5 South Car. 358; *Grinnell* v. *Western Union Telegraph Co.*, 113 Mass. 299, 301; *Birney* v. *New York & Washington Tel. Co.*, 18 Maryland 341; *S. C.* 81 Am. Dec. 607; *Ellis* v. *Am. Tel. Co.*, 13 Allen, 226; *Western Union Tel. Co.* v. *Carew*, 15 Michigan, 525; *Schwartz* v. *Atlantic & Pacific Tel. Co.*, 18 Hun, 157; *Breese* v. *United States Tel. Co.*, 48 N.Y. 132; *Pinckney* v. *Telegraph Co.*, 19 South Car. 71; *Hart* v. *Western Union Tel. Co.*, 66 Cal. 579; *McAndrew* v. *Electric Tel. Co.*, 17 C. B. 3; *Clement* v. *Western Union Tel. Co.*, 137 Mass. 463; *Lassiter* v. *Western Union Tel. Co.*, 89 Nor. Car. 334; *United States Tel. Co.* v. *Gildersleeve*, 29 Maryland, 232; *Becker* v. *Western Union Tel. Co.*, 11 Nebraska, 87; *Western Union Tel. Co.* v. *Neill*, 57 Texas, 283; *White* v. *Western Union Tel. Co.*, 14 Fed. Rep. 710; *Jones* v. *Western Union Tel. Co.*, 18 Fed. Rep. 717; *Milwaukee &c. Railway Co.* v. *Kellogg*, 94 U. S. 474; *Griffin* v. *Colver*, 16 N. Y. 489; *S. C.* 69 Am. Dec. 718; *Masterton* v. *Mayor of Brooklyn*, 7 Hill, 61; *S. C.* 42 Am. Dec. 38; *Kiley* v. *Western Union Tel. Co.*, 39 Hun, 158; *Beaupré* v. *Pac. & Atlan. Tel. Co.*, 21 Minnesota, 155; *Lowery* v. *Western Union Tel. Co.*, 60 N. Y. 198; *Kinghorne* v. *Tel. Co.*, 18 Up. Can. Q. B. 60; *Stevenson* v. *Tel. Co.*, 16 Up. Can. Q. B. 530; *Landsberger* v. *Magnetic Tel. Co.*, 32 Barb. 530; *Baldwin* v. *United States Tel. Co.*, 45 N. Y. 744; *Hibbard* v. *Western Union Tel. Co.*, 33 Wisconsin, 558.

*Mr. Charles A. Clark, Mr. Crom. Bowen,* and *Mr. Whiting S. Clark* submitted on their brief, which, to the same point, was as follows:

What is the rule of damages? The authorities are uniform in support of the damages recovered in the court below in this case. The rule of damages measured substantially as in this case by the court below is established in the following cases: *United States Tel. Co.* v. *Wenger*, 55 Penn. St. 262; *S. C.* 93 Am. Dec. 751; *Squire* v. *New York Central Railroad Co.*, 98 Mass. 239; *Tyler* v. *Western Union Tel. Co.*, 60 Ill. 421; *True* v. *International Tel. Co.*, 60 Maine, 9; *Bartlett* v. *Western Union Tel. Co.*, 62 Maine, 209, 222; *Manville* v. *Western Union Tel. Co.*, 37 Iowa, 214, 220; *Turner* v. *Hawkeye Tel. Co.*, 41 Iowa, 458; *Sweatland* v. *Ill. & Miss. Tel. Co.*, 27 Iowa, 433; *Rittenhouse* v. *Independent Tel. Co.*, 44 N. Y. 263; *N. Y. & Wash. Printing Tel. Co.* v. *Dryburg*, 35 Penn. St. 298; *S. C.* 78 Am. Dec. 338; *Leonard* v. *Electro-Magnetic Tel. Co.*, 41 N. Y. 544; *Richmond & N. O. Tel. Co.* v. *Hobson*, 15 Grattan, 122; *Western Union Tel. Co.* v. *Graham*, 1 Colorado, 230; *Western Union Tel. Co.* v. *Fenton*, 52 Indiana, 1.

In *Telegraph Co.* v. *Wenger*, 55 Penn. St. 262, *S. C.* 93 Am. Dec. 751, the advance in price was held to be the measure of the damages.

In *Squire* v. *Western Union Tel. Co.*, 98 Mass. 239, the court say: "The sum, therefore, which would compensate the plaintiffs for the loss and injury sustained by them would be the difference, if any, in the price which they agreed to pay for the merchandise by the message which defendants undertook to transmit if it had been duly and seasonably delivered in fulfilment of their contract, and the sum which the plaintiffs would have been compelled to pay at the same place in order, by the use of due diligence, to have purchased the like quantity of the same species of merchandise."

In *True* v. *Telegraph Co.*, 60 Maine, 26, it is said by the court: "The sum, therefore, which would be a compensation for the direct loss and injury sustained by the non-delivery of this message is the difference (if at a higher rate) between the ninety cents named and the sum which the plaintiffs were or would have been compelled to pay at the same place, in order, by due and reasonable diligence, after notice of the failure of the telegram, to purchase the like quantity and quality of the

same species of merchandise." Citing *Squire* v. *Western Union Tel. Co.*, 98 Mass. 232.

In *Manville* v. *Telegraph Co.*, 37 Iowa, 220, it is said by the court: "The party failing to deliver the goods according to agreement has injured the other party; the measure of that injury, where the price has not been paid, is fixed by law at the sum which the goods would have brought in market at the time and place of delivery, less the contract price. The law deems it certain that if the goods had been delivered to the purchaser he could have sold them for the market value. This value is capable of being ascertained with regard to all commodities having a fixed market price. The same rule, based upon the same principle, is applicable in this case. The market value of hogs in Chicago on any day was capable of being certainly ascertained. If the defendant had had his hogs in Chicago three days sooner he could have sold them at the then market price. He was prevented from shipping his hogs sooner by the negligence of defendant's agent. The difference, therefore, between the market value of the hogs on the day plaintiff could have put them on the market, if the defendant had been guilty of no negligence in the delivery of the despatch, and the market price when he was afterward able to put his hogs into the market, is the direct consequence of the neglect of the defendant."

In *Thompson* v. *Telegraph Co.*, 64 Wisconsin, 531, the message was, "Send bay horse to-day — Mack loads to-night." The court say: "The only other question in the case is whether the plaintiff upon the facts proved was entitled to recover more than nominal damages. It seems to us that the telegram itself informed the agent of the company that it was of importance that the horse mentioned therein should be sent to Boscobee immediately on receipt of the telegram, so that he would arrive there before Mack would load his horses that evening. . . . . The evidence clearly tends to show that the plaintiff lost the sale of the horse to Mack by reason of the delay in transmitting the message, and that the loss of such sale was a damage to them of $25, which was the amount they recovered."

In *Rittenhouse* v. *Telegraph Co.*, 44 N. Y. 263, it is said by the court: " If the message had been correctly transmitted, the plaintiffs, through their agents, could have purchased the 500 shares of Hudson River Railroad stock for $136.75 per share. As it was, using the utmost diligence, they were obliged to pay $139.50 per share, and this is the measure of their damage. In order to hold the defendant liable for the damage, it was not incumbent on the plaintiffs to purchase the stock. This purchase and the price that they were obliged to pay, $139.50 per share, was only important as showing the extent of the damage. The plaintiffs could have maintained their suit against the defendant without having purchased the stock by showing that immediately, or soon after the delivery of the erroneous message, the stock was in the market so that their order could not have been filled for less than the $139.50 per share."

Mr. Justice Matthews, after stating the case, delivered the opinion of the court.

The view we take of this case requires us, in answer to the fourth question certified, to say that, in the circumstances disclosed by the record, the plaintiff was entitled only to recover nominal damages, and not the difference in value of the oil if it had been purchased on the day when the message ought to have been delivered and the market price to which it had risen on the next day. As the judgment was rendered in his favor for the latter sum, it must be reversed on that account, and, upon the facts found by the court, judgment rendered for nominal damages only, which finally disposes of the litigation. It, therefore, becomes unnecessary to consider or decide any of the other questions certified to us.

It is found as a fact that if the despatch upon its first receipt at Oil City had been promptly delivered to Charles T. Hall, to whom it was addressed, he would by twelve o'clock on that day have purchased ten thousand barrels of oil at the market price of $1.17 per barrel on the plaintiff's account. He was unable to do so in consequence of the delay in the delivery of

the message. On the next day the price had advanced to $1.35 per barrel, and no purchase was made because Charles T. Hall, to whom the message was addressed, did not deem it advisable to do so, the order being conditional on his opinion as to the expediency of executing it. If the order had been executed on the day when the message should have been delivered, there is nothing in the record to show whether the oil purchased would have been sold on the plaintiff's account on the next day or not; or that it was to be bought for resale. There was no order to sell it, and whether or not the plaintiff would or would not have sold it is altogether uncertain. If he had not done so, but had continued to hold the oil bought, there is also nothing in the record to show whether, up to the time of the bringing of this action, he would or would not have made a profit or suffered a loss, for it is not disclosed in the record whether during that period the price of oil advanced or receded from the price at the date of the intended purchase. The only theory, then, on which the plaintiff could show actual damage or loss is on the supposition that, if he had bought on the 9th of November, he might and would have sold on the 10th. It is the difference between the prices on those two days which was in fact allowed as the measure of his loss.

It is clear that in point of fact the plaintiff has not suffered any actual loss. No transaction was in fact made, and there being neither a purchase nor a sale, there was no actual difference between the sums paid and the sums received in consequence of it, which could be set down in a profit and loss account. All that can be said to have been lost was the opportunity of buying on November 9th, and of making a profit by selling on the 10th, the sale on that day being purely contingent, without anything in the case to show that it was even probable or intended, much less that it would certainly have taken place.

It has been well settled since the decision in *Masterton* v. *The Mayor of Brooklyn*, 7 Hill, 61, that a plaintiff may rightfully recover a loss of profits as a part of the damages for breach of a special contract, but in such a case the profits to

be recovered must be such as would have accrued and grown
out of the contract itself as the direct and immediate result
of its fulfilment.    In the language of the Supreme Judicial
Court of Massachusetts in *Fox* v. *Harding*, 7 Cush. 516:
"These are part and parcel of the contract itself, and must
have been in the contemplation of the parties when the agree-
ment was entered into.    But if they are such as would have
been realized by the party from other independent and col-
lateral undertakings, although entered into in consequence
and on the faith of the principal contract, then they are too
uncertain and remote to be taken into consideration as a part
of the damages occasioned by the breach of the contract in
suit." p. 522.    This rule was applied by this court in the case
of *The Philadelphia, Wilmington and Baltimore Railroad* v.
*Howard*, 13 How. 307.    In *Griffin* v. *Colver*, 16 N. Y. 489,
the rule was stated to be that "the damages must be such as
may fairly be supposed to have entered into the contempla-
tion of the parties when they made the contract; that is, they
must be such as might naturally be expected to follow its
violation; and they must be certain both in their nature and
in respect to the cause from which they proceed.    The famil-
iar rules on this subject are all subordinate to these.    For
instance, that the damages must flow directly and naturally
from the breach of contract, is a mere mode of expressing the
first; and that they must be not the remote but proximate
consequence of such breach, and must not be speculative or
contingent, are different modifications of the last." p. 495.

In *Booth* v. *Spuyten Duyvil Rolling Mills Co.*, 60 N. Y. 487,
the rule was stated to be that "the damages for which a
party may recover for a breach of a contract are such as ordi-
narily and naturally flow from the non-performance.    They
must be proximate and certain, or capable of certain ascertain-
ment, and not remote, speculative or contingent." p. 492.
In *White* v. *Miller*, 71 N. Y. 118, 133, it was said: "Gains
prevented, as well as losses sustained, may be recovered as
damages for a breach of contract, when they can be rendered
reasonably certain by evidence, and have naturally resulted
from the breach."

In cases of executory contracts for the purchase or sale of personal property ordinarily, the proper measure of damages is the difference between the contract price and the market price of the goods at the time when the contract is broken. This rule may be varied according to the principles established in *Hadley* v. *Baxendale*, 9 Exch. 341 ; *S. C.* 23 L. J. Ex. 179, where the contract is made in view of special circumstances in contemplation of both parties. That well-known case, it will be remembered, was an action against a carrier to recover damages occasioned by delay in the delivery of an article, by reason of which special injury was alleged. In the application of the rule to similar cases, where there has been delay in delivering by a carrier which amounts to a breach of contract, the plaintiff is not always entitled to recover the full amount of the damage actually sustained ; *prima facie* the damages which he is entitled to recover would be the difference in the value of the goods at the place of destination at the time they ought to have been delivered and their value at the time when they are in fact delivered. *Horn* v. *Midland Railway Co.*, L. R. 8 C. P. 131 ; *Cutting* v. *Grand Trunk Railway Co.*, 13 Allen, 381. Any loss above this difference sustained by the plaintiff, not arising directly from the delay, but collaterally by reason of special circumstances, can be recovered only on the ground that these special circumstances, being in view of both parties to the contract, constituted its basis. *Simpson* v. *London & Northwestern Railway Co.*, 1 Q. B. D. 274. So the loss of a market may be made an element of damages against a carrier for delay in delivery, where it was understood, either expressly or from the circumstances of the case, that the object of delivery was to get the benefit of the market. *Pickford* v. *Grand Junction Railway Co.*, 12 M. & W. 766. In *Wilson* v. *Lancashire & Yorkshire Railway Co.*, 9 C. B. N. S. 632, the plaintiff was held entitled to recover for the deterioration in the marketable value of the cloth by reason of delay in the delivery, whereby the season for manufacturing it into caps, for which it was intended, was lost.

The same rule, by analogy, has been applied in actions against telegraph companies for delay in the delivery of mes-

sages, whereby there has been a loss of a bargain or a market. Such was the case of *United States Telegraph Co.* v. *Wenger*, 55 Penn. St. 262. There the message ordered a purchase of stock, which advanced in price between the time the message should have arrived and the time when it was purchased under another order, and the advance was held to be the measure of damages. There was an actual loss, because there was an actual purchase at a higher price than the party would have been compelled to pay if the message had been promptly delivered, and the circumstances were such as to constitute notice to the company of the necessity for prompt delivery. The rule was similarly applied in *Squire* v. *Western Union Telegraph Co.*, 98 Mass. 232. There the defendant negligently delayed the delivery of a message accepting an offer to sell certain goods at a certain place for a certain price, whereby the plaintiff lost the bargain, which would have been closed by a prompt delivery of the message. It was held that the plaintiff was entitled to recover, as compensation for his loss, the amount of the difference between the price which he agreed to pay for the merchandise by the message, which if it had been duly delivered would have closed the contract, and the sum which he would have been compelled to pay at the same place in order, by the use of due diligence, to have purchased a like quality and quantity of the same species of merchandise. There the direct consequence and result of the delay in the transmission of the message was the loss of a contract which, if the message had been duly delivered, would by that act have been completed. The loss of the contract was, therefore, the direct result of the defendant's negligence, and the value of that contract consisted in the difference between the contract price and the market price of its subject matter at the time and place when and where it would have been made. The case of *True* v. *International Telegraph Co.*, 60 Maine, 9, cannot be distinguished in its circumstances from the case in 98 Mass. 232, and was governed in its decision by the same rule. The cases of *Manville* v. *Telegraph Co.*, 37 Iowa, 214, 220, and of *Thompson* v. *Telegraph Co.*, 64 Wisconsin, 531, were instances of the application of the same rule to

similar circumstances, the difference being merely that in these the damage consisted in the loss of a sale instead of a purchase of property, which was prevented by the negligence of the defendant in the delivery of the messages. In these cases the plaintiffs were held to be entitled to recover the losses in the market value of the property occasioned, which occurred during the delay.

Of course, where the negligence of the telegraph company consists, not in delaying the transmission of the message, but in transmitting a message erroneously, so as to mislead the party to whom it is addressed, and on the faith of which he acts in the purchase or sale of property, the actual loss based upon changes in market value are clearly within the rule for estimating damages. Of this class examples are to be found in the cases of *Turner* v. *Hawkeye Telegraph Co.*, 41 Iowa, 458, and *Rittenhouse* v. *Independent Line of Telegraph*, 44 N. Y. 263; but these have no application to the circumstances of the present case. Here the plaintiff did not purchase the oil ordered after the date when the message should have been delivered, and therefore was not required to pay, and did not pay, any advance upon the market price prevailing at the date of the order; neither does it appear that it was the purpose or intention of the sender of the message to purchase the oil in the expectation of profits to be derived from an immediate resale. If the order had been promptly delivered on the day it was sent, and had been executed on that day, it is not found that he would have resold the next day at the advance, nor that he could have resold at a profit at any subsequent day. The only damage, therefore, for which he is entitled to recover is the cost of transmitting the delayed message.

*The judgment is accordingly reversed, and the cause remanded, with directions to enter a judgment for the plaintiff for that sum merely.*