## M. P. PEGRAM v. THE WESTERN UNION TELEGRAPH COMPANY.

*Principal and Agent—Telegraph Company—Negligence in transmitting Telegram.*

1. The sender of a telegram constitutes the Telegraph Company his agent for the transmission and delivery of the message just as it is written by him and no further ; therefore, the sender is not bound by the terms of a telegram in-which a material alteration is made by the negligence of the company in transmitting it.

2. The sender of a telegram is entitled to at least nominal damages, and to such substantial damages as he may sustain by reason of his message being improperly-transmitted ; that is, such damages as are the natural and proximate consequence of the company's negligence.

3. The sender cannot recover of the company damages sustained by the receiver of a message, although the sender has been obliged, by the judgment of a Court in another State, to pay damages sustained by such receiver, in consequence of the wording of the telegram being changed in transmission.

4. If an agent, upon being sued for a personal liability incurred by him in carrying out his principal's orders, give due notice of the suit to his principal, to the end that he may defend it, and, after this, judgment is rendered against the agent, such judgment is conclusive upon the principal, as to the extent of the agent's loss, in an action brought by the agent against his principal for indemnity. But no such relation exists between the sender of a telegram and the Telegraph Company as makes this principle applicable.

CIVIL ACTION, tried before MacRae, J., and a jury, at September Term, 1887, of MECKLENBURG Superior Court.

The plaintiff resided in the town of Charlotte, in this State, and W. C. Sedden & Co. were doing the business of brokers in the city of Richmond, in the State of Virginia, in the year 1881.

On the 4th of February of that year, these brokers sent the plaintiff a letter, as follows:

"If your customer will offer 100 shares (or any part of it), C. C. & A. R. R. stock at 43, delivered here, please wire us at our expense."

Afterwards, on the 14th of the same month, the plaintiff addressed to the brokers mentioned, a message, in these words:

"Party offers 100 shares C. C. & A. stock at forty-three. Answer quick." And he delivered it to the defendant, to be transmitted over its telegraph. It is admitted that this message was not sent truly, but that the word " three, " at the end of the word "forty," was omitted, so that the message, as transmitted by the defendant, contained the word "forty" instead of "forty-three," as it should have done. The plaintiff paid the defendant sixty-two cents, the price required for sending the telegram, and the agent of the defendant understood at the time he sent the message that it referred to the stock of the Charlotte, Columbia and Augusta Railroad Company.

In about two hours after the message was so transmitted, on the same day, the brokers named replied to the plaintiff's message, as follows:

"Will take the hundred shares; draw at sight, with stock attached."

Thereupon, at once, on the same day, the plaintiff purchased one hundred and one shares of the stock mentioned, and made his draft on the brokers named for $4,343, the price of the stock at "forty-three," and sent the same to a

bank in Richmond for collection, with the stock attached, with instructions to the bank to deliver the stock when the draft should be paid.

Afterwards, on the 16th of the same month, when the bank presented the draft for payment, the brokers were surprised at the amount of the same, and called upon the plaintiff for an explanation, who at once replied as follows:

" My offer was forty-three plainly, and you replied, ' Will take stock,' and bought on your reply."

The draft was not paid, and the stock was not delivered. This action is brought to recover damages sustained by the plaintiff, by reason of the grossly negligent and false transmission, by the defendant, of his telegram to the brokers named above, on the 14th of February, 1881, as above stated.

In the complaint it is alleged, among other things, that in consequence of the plaintiff's telegram so falsely sent, the brokers named at once sold the stock named, then *in transitu* to them as above stated, at the price of $41.75 per share, which was the market value thereof in Richmond (the face value being $100 per share), and as they failed to get the stock from the plaintiff as they expected to do, they had to buy such stock to make their contract good, at the price of $41.75 per share, or more, and that, in consequence of such negligence of the defendant, the plaintiff was afterwards compelled to pay the said brokers the difference between $40 per share and $41.75 per share of the stock, and other costs and damages, aggregating $250.

On the trial, it was in evidence, that the plaintiff did not send his first telegram mentioned, in response to the letter of the 4th of February, 1881, of the brokers to him; and that the first knowledge he had, of the missending of the telegram, was the information he received from the brokers, as stated above.

It was likewise in evidence, that the stock named was not regularly quoted as to price, but it was quoted in the Rich-

mond papers at $41 to $43, and the market value of it in Charlotte was $42.50; that propositions between Charlotte and Richmond to buy and sell stock, did not go beyond the day they were made.

It was likewise in evidence, that the brokers named brought their action against the present plaintiff in an appropriate Court, in the State of Virginia, to recover damages for his failure to deliver the stock he so contracted to sell them—that he made active and earnest defence thereto, but, nevertheless, the plaintiffs therein recovered the sum of $175 as damages, as well as costs, and he had to pay reasonable counsel fees, and other costs.

The plaintiff offered evidence to prove, that he gave the defendant ample notice of the action and its nature so brought against him in the Court of Virginia, to the end it might make defence thereto, and save him harmless—that he would hold it responsible to him for any recovery that might be had against him—that after the recovery against him, he paid the judgment, costs, &c.

The defendant objected to this evidence; the Court sustained the objection, and this is assigned as error.

There was much other evidence, that need not be reported here.

At the close of the evidence, the plaintiff requested the Court to give the following instructions to the jury:

"1. That if the plaintiff was sued by W. C. Sedden & Co. in a Court in Richmond, Va., having jurisdiction of an action for the recovery of damages, arising out of the mistake in the message, and Pegram, the plaintiff, gave the defendant company reasonable notice to come in and defend the said action, and the defendant company failed to do so, and Pegram. the plaintiff, in good faith, and with due diligence, defended the said action, and W. C. Sedden & Co. recovered judgment against him, the defendant would be estopped to deny its liability to the plaintiff, and the plaintiff would be

entitled to recover the amount of the said judgment, with costs, provided said judgment and costs were paid by him. This instruction was refused, and the plaintiff excepted.

2. That if Pegram delivered his telegram of the 14th of February, 1881, to the defendant, not in answer to Sedden's letter of the 4th of February, 1881, but as an original and independent proposition to Sedden, to sell him the stock, then the defendant was the agent of Pegram, and liable to him for any damages sustained by him from its gross negligence in transmitting the message.

This instruction was not given in the words asked, and the plaintiff excepted.

The Court did instruct the jury, that the defendant would be liable for gross negligence, and that if, by the exercise of ordinary care, the defendant could have avoided the mistake in the message, the jury should respond to the first issue, Yes.

3. That if the jury believe the evidence, the defendant was the agent of Pegram, and liable to him, by reason of its negligence in transmitting the message.

This instruction was not given in the words asked, but as above stated, and plaintiff excepted.

4. That apart from the estoppel referred to in the *first* prayer of plaintiff for instructions, the measure of damages would be the difference between the price as stated in the Sedden copy of Pegram's message of the 14th of February, 1881, and the market value of the stock at Richmond, Va., on the day it was to be delivered to Sedden.

This instruction was refused, because the whole contention of plaintiff, as it appears by his complaint, was, that his damage was that he '*was compelled to pay* W. C. Sedden the difference between 100 shares of said stock, at $40 per share, and the same stock at $41.75 per share, and other costs and damages,' &c., and the Court held that plaintiff could not recover back the damage alleged in the complaint, and has

proven no other except the amount paid for the transmission of the telegram. Plaintiff excepted.

His Honor stated, in his charge, on the second issue, that the plaintiff had proven no damages, except the amount paid for the transmission of the message, and this is sixty-two cents.

The plaintiff excepted to the instructions and charge given, and especially assigns as errors therein, that his Honor, instead of the charge he gave, should have instructed the jury:

1. That the plaintiff is entitled to recover as damages the difference between the price, as stated in the telegram delivered by him to the defendant on the 14th day of February, 1881, and that stated in the telegram delivered to Sedden on said day, or the difference between the price of the stock as stated in the message, as delivered to Sedden by the defendant on said day, and its market value in Richmond, Va., on the day the stock was to be delivered to Sedden, or at the time Sedden first discovered the mistake; or, that plaintiff is entitled to recover as damages, at least the amount recovered of him in the action by Sedden against him, and which he paid before this suit was brought, or said amount and the cost of said action so paid by him on said amount, and the cost and reasonable expenses incurred by him in defending the said action, after reasonable notice to the defendant and its refusal to defend the same, provided said amount, costs and expenses, were paid by this plaintiff, after notice thereof to defendant, given before this action was brought; and further, that plaintiff was entitled to interest on said amount so paid by him, and certainly entitled to recover interest, if the jury should see fit to allow it.

There was a verdict for the plaintiff on the first issue submitted, and a verdict on the second issue submitted, in accordance with the instructions of his Honor, to-wit: that plaintiff was entitled to recover, as damages, sixty-two cents."

100—3

There was judgment for the plaintiff, from which he appealed to this Court.

*Messrs. W. P. Bynum* and *P. D. Walker,* for the plaintiff.
*Mr. C. N. Tillett,* for the defendant.

MERRIMON, J., (after stating the facts). A brief reference to the nature and purpose of the defendant's employment will serve to throw light upon the plaintiff's cause of action, and the extent of damages to which he is entitled. It is a corporation, invested with powers, and has functions appropriate in kind and extent, to effectuate and facilitate the transmission of intelligence from one place to another, by means of electricity. The chief instrumentality it employs for its purposes is a machine, apparatus or contrivance, styled the *electric* telegraph, or *electro magnetic telegraph,* an instrument that conveys intelligence with the velocity of lightning, by means of signals, certain mechanical movements, or sounds representing letters, words, ideas, or expressions, produced by the application of electricity—electric fluid—conducted through and along iron wires for any distance, long or short.

The business of the defendant ordinarily is, to employ its telegraph, for the use, benefit, advantage and convenience of the public—all persons who desire to take benefit of it in the transmission of intelligence that may be lawfully transmitted, upon the payment of reasonable compensation. In other words, its business is, by such means and appliances, simply to transmit intelligence—what one or more persons desire and intend to say or communicate to another or other persons at a distance—delivered to it for transmission in the shape of messages, dispatches, telegrams, or communications, usually and properly in writing. Its office and undertaking are to transmit promptly, as directed, in the message to be sent, precisely what is said and expressed therein—that is,

to transmit, by such signals in the way indicated above, the exact words, in their proper order and connection, as set down in the message. In the absence of special agreement, it undertakes to do, and has authority from the sender of the message, to do no more.

Generally, when it receives the message, it agrees, in terms, or by implication, to so send it, and has no other agency of the sender, or of the person to whom it is sent. It has no authority or agency of the person sending or to whom a message is sent, to make, modify, or alter at all, the terms or effect of an agreement or proposition to buy or sell anything contained in the message it receives to transmit, or has been transmited by it, or to bind a person sending or receiving such message. Its sole duty is to send the message, truly, and as promptly as may be, in the order of business. If it is negligent, and fails in this respect, the party injured by such neglect will have his cause of action against it, and may recover such damages as he has sustained.

Now, it appears that the defendant received from the plaintiff, and undertook, for compensation paid, to transmit for him, as directed, this message: "Party offers 100 shares C. C. & A. stock at forty-three. Answer quick."

It sent only a part of this message—it negligently omitted to transmit the word "three" at the end of the word "forty," thus materially changing the proposition to sell, and misinforming and misleading the party to whom it was sent, and causing the latter to send a message in reply that misled the plaintiff.

Such neglect created the plaintiff's cause of action, alleged in the complaint, and he is clearly entitled to recover at least nominal damages, and such substantial damages as he has sustained; that is, such as in the course of things were naturally the proximate consequence of the wrong complained of—such as the parties may have fairly contemplated by their contract, in case of a breach thereof; but not such as may

have been the consequence of secondary and remote causes, indirectly growing out of such breach.

Thus, if the plaintiff, in consequence of the message received by him in reply to his, falsely transmitted by the defendant to the brokers in Richmond, purchased the stock referred to, and failed to realize for it what it cost him, and reasonable compensation for his labor and trouble about it, he might recover the amount so lost and such compensation, and also the sum he paid for transmitting the message.

But he could not recover damages for any injury sustained by the persons—the brokers—to whom his message was falsely transmitted, by reason thereof, because the injury done to them was not an injury to him. He had no cause of action on that account; they had, if they so sustained injury. Nor was the plaintiff liable to the brokers for any such injury sustained by them, or on account of the breach of any contract with them, created by the message as transmitted, because he did not send, or direct the defendant to transmit, the message it transmitted—he did not offer, or agree, to sell to the brokers the stock at "forty"—they had no contract with him.

As we have seen, the defendant had no agency or authority of the plaintiff to change or modify, in terms, the message he delivered to it to be transmitted to the brokers named. It transmitted the false message to them in its own wrong, and it alone was answerable to them for any injury they sustained thereby—the plaintiff had done them no injury—the defendant may have done so, in delivering to them the false message, upon which they may have acted to their detriment. If they did not, they could not have recovered substantial damages. *West. U. T. Co.* v. *Hall,* 124 U. S., 444.

But it is earnestly contended by the plaintiff, that the brokers named brought their action in a Court in the State of Virginia, having proper jurisdiction, against him, and recovered judgment for damages and costs, which he paid, on

account of such falsely transmitted message to them; that the plaintiff notified the defendant to appear and defend that action, and save him harmless, which it failed to do, and he is, therefore, entitled, in this action, to recover such outlay on his part as damages.

We cannot so decide. We are unable to see how an action upon a contract, never, in fact, made, could be successfully prosecuted against the present plaintiff; and it is still more difficult to comprehend, how the damages he has sustained in such action, or any outlay of his therein, can be recovered by him in this action, there being, as we have seen, no privity between the plaintiff and defendant in that respect, and no such relations subsisting as to give the former cause for redress against the defendant, measured by the results of the action referred to, the only evidence of which was the transcript of the record thereof. Such evidence would be admissible, if an agent, in performing his principal's orders, should incur a personal responsibility and loss, and seek indemnity therefor against the latter, on the ground of their relations. In such case, if the principal had notice of the action, its result would be conclusive as to the extent of the damage. But this is a very different case from one of that nature.

Here, the present plaintiff was not answerable to the plaintiffs in the action just referred to for injuries they sustained by the negligence of the present defendant, nor was the latter answerable therefor to the plaintiff in this action in any aspect of their relations. *Hare* v. *Grant*, 77 N. C., 203 ; *Leak* v. *Covington*, 99 N. C., 559.

As the defendant was not answerable to the plaintiff for any injury the brokers named sustained, by reason of the false message transmitted to them by it, the plaintiff cannot recover from the defendant, as damages in this action, any sum the brokers may have, for any cause, recovered from the plaintiff.

There is no error, and the judgment must be affirmed.

No error. Affirmed.

Davis, J., dissenting. The plaintiff sent a message and received a reply thereto. By reason of the gross and inexcusable negligence of the defendant, the message was not delivered as it was given for transmission, in consequence of which, a reply was made to, and received by, the plaintiff, upon which he acted, and upon which he had a right to act, because he had a right to assume that the message, to which it was a response, had been correctly sent. Acting upon the reply received to the message so transmitted, he purchased and sent stock to Richmond, which, in consequence, and as a direct consequence, of the misunderstanding caused by the gross negligence of the defendant, was there attached, and the plaintiff was put to necessary and unavoidable cost, expense, and loss, for which, (there being gross negligence found) I think, the defendant was liable. By the inexcusable negligence of the defendant, the plaintiff has been made to incur expense and loss, which he could, by no possible diligence, prevent, and for which, I think, the defendant ought to answer. It was the direct and unavoidable, not the *speculative or remote*, result of the negligence.

I cannot concur in the view taken of the authorities cited, as applied to this case.