The plaintiff proved that he lived in the city of New Bern, North Carolina, and had for eighteen months prior to the time of receiving the telegraphic dispatch as set forth in the complaint, to wit, 21 April, 1892, been engaged in buying and selling stocks on the New York market, that he carried on his correspondence in regard thereto over the telegraphic lines of the defendant, and that for about a year before and up to the said date, 21 April, 1892, he received from the defendant the quotation of the prices of certain stocks in which he dealt three times every day, that he would receive quotations, and telegraph over defendant's lines to Falmstock 
Co., in New York, to buy or sell stocks for him based on the information so furnished him by the defendant.
That defendant also regularly furnished the plaintiff with information as to the declaration of dividends on such stocks after same had been declared, that a short time before said 21 April, 1892, the plaintiff went to the said city of New York to obtain information in regard to the stock of the American Cotton Oil Company, and while there obtained information that said American Cotton Oil Company would declare a dividend on its preferred stock early in May, 1892, that upon his return to New Bern said plaintiff sent a message to said Falmstock Co., his said agents, over the telegraph lines of the defendant, asking said Falmstock Co. to keep him posted as to said dividend, and the said Falmstock Co. owned large amounts of said stocks, and had *Page 51 
means to obtain information concerning said dividend, and had told plaintiff when he was in New York, as aforesaid, that said dividend would be declared the first part of May, that in reply to said message so sent to said Falmstock Co. by the plaintiff, said Falmstock Co. delivered to defendant in said city of New York, to be sent to (72) plaintiff at New Bern, over the defendant's lines, the message set forth in the complaint, to wit:
To F. W. Hughes, New Bern, N.C.
Natty at close chapel fancy probably be declared May third.
FALMSTOCK CO.
and paid defendant its price for the transmission and delivering of said message.
That said message meant, according to the cipher code used by plaintiff, "the market is firm, with upward tendency at close: Cotton Oil Preferred three per cent dividend will probably be declared 3 May."
That the defendant never delivered said message to the plaintiff, but did, on said 21 April, 1892, deliver to plaintiff a message as follows:
To F. W. Hughes, New Bern, N.C. 21 APRIL, 1892.
Natty at close chapel fancy probably be declared May thirty.
FALMSTOCK CO.
the word "third" in said message having been changed to the word "thirty" in the message delivered to plaintiff by defendant, as stated in the complaint.
That on said 21 April, 1892, the plaintiff owned 800 shares of said preferred stock in the American Cotton Oil Company, then worth about $60,000, and that the said company did on said 3 May, 1892, declare its dividend on said stock, that plaintiff gave the defendant no information as to his reasons for desiring information as to the time at which said dividend would be declared, except such information as defendant received from said dealings with plaintiff, and such as appears from the faces of said telegraphic messages; there was no (73) evidence to show that the defendant, its agents or employees, had any knowledge as to the true meaning of said cipher message, except as aforesaid.
Plaintiff then proved (defendant objecting, and its objection overruled, to which it excepted) that by reason of said mistake in said telegram plaintiff immediately sold in New York 500 shares of the stock, 400 shares at the price of seventy-six and a half cents, and 100 shares at the price of seventy-seven cents on the one dollar face value thereof, which were the market values of said shares at the time of said sales, and that a few days thereafter, and as soon as plaintiff learned of said mistake in the said telegraphic message, to wit, on 29 April, 1892, he *Page 52 
tried to repurchase said stock in New York, or a like quantity thereof, and did purchase 300 shares thereof, 200 shares at seventy-nine and three-quarter cents, and 100 shares at eighty cents on the one dollar face value thereof, and that at the time plaintiff learned of said error and mistake in said telegraphic message, which was within a few days, said stock was selling on the market in New York at seventy-eight and one-half cents on the one dollar face value thereof, that the difference between the amounts for which plaintiff sold his stock, as aforesaid, after receiving said dispatch and what he could have gotten at the time he learned of said error and mistake was $1,025; that he, the plaintiff, did not recollect the exact price at which he subsequently sold the stock so repurchased, but that he knew that he had sold some of it at seventy-eight and a half cents, and some of it at less than seventy-six and a half cents on the one dollar face value thereof, but did not recollect when he sold it.
The defendant stated that it did not rely on the objections set up in the answer to plaintiff's demand on the defendant, or as to the (74) defense that the message had not been repeated, and did not offer any evidence.
The court charged the jury:
That plaintiff was not, under the whole evidence, entitled to recover from the defendant any other sum or damages than the price of said telegram, to wit, fifty cents, to which the plaintiff objected, and excepted.
The jury found the issue in favor of the plaintiff, and assessed his damages at fifty cents.
Plaintiff appealed from the refusal of his motion for a new trial.
The plaintiff's allegation is to the effect that the defendant made a mistake in the transmission of a telegram directed to him and relating to the stock of the American Cotton Oil Company. He says that if the message had been delivered to him as his correspondent wrote it he would not have sold 500 shares of that stock which he then owned, but that being misled and deceived by the false information thus negligently furnished him by the defendant, he did sell those shares of stock.
If, because of defendant's negligence, the plaintiff had disposed of his property at less than its value, there would be some foundation for the plaintiff's demand for damages above the cost of the telegram. But it appears that he got for his stock, when he sold it, "the market value" thereof. *Page 53 
The "market value" of such property, nothing else appearing, is its value. It cannot be said that one suffers damage when induced to exchange his property for its value in money. He has, after the exchange, what to the law appears to be the exact equivalent for (75) that which he has sold.
But the plaintiff says that this class of stock advanced in price soon after he was so induced to sell, and that he bought 300 shares at the advanced rate. The defendant cannot, we think, be held liable for this conduct of the plaintiff. It did not induce him to buy. As we have said, he suffered, it appears, no damage by reason of being induced by the erroneous message to sell. We cannot indulge in speculation as to what might or might not have happened if the telegram had been correctly transmitted. To do so would be to concern ourselves about speculative damages, which are not recoverable. Pegram v. Telegraph Co., 100 N.C. 28; Telegraph Co. v. Hall,124 U.S. 444.
The view we take of this matter renders it unnecessary for us to consider the question whether or not there was any evidence that the defendant knew of the importance of the message and of the consequences likely to follow its incorrect transmission.
No error.
(76)