Action to recover damages, alleged to have been sustained by plaintiff, resulting from negligence of defendant in the transmission and delivery of a telegram. On 1 September, 1922, plaintiff delivered to defendant, *Page 701 
at Hamlet, N.C. for transmission to the sendee, a telegram addressed to Hubbard Brothers Company, New York, and signed by plaintiff, reading as follows:
"If Government report fifty-six or under buy two hundred bales December one thousand dollars deposited Page Trust Company, Hamlet, N. Car., your credit. Answer."
On same day, a telegram addressed and signed as above was delivered by defendant to Hubbard Brothers Company, reading as follows:
"Fifty-six or under buy two hundred bales December one thousand dollars deposited Page Trust Company, Hamlet, N. Car., your credit. Answer."
The words, "If Government report," appearing in the telegram filed by plaintiff at Hamlet, N.C. with defendant, did not appear in the telegram delivered by defendant to Hubbard Brothers Company in New York. Defendant's agent at Hamlet failed to include said words in the telegram transmitted by him. No telegram including these words was transmitted and delivered to Hubbard Brothers Company by defendant.
Hubbard Brothers Company are brokers engaged in business in New York City. They buy and sell cotton, for customers, on commission, on the New York Cotton Exchange. On 1 September, 1922, a report on the condition of the cotton crop by the United States Government was expected. It is the custom of the Government to issue such reports from time to time. The price of cotton is usually affected by these reports. The telegram filed by plaintiff with defendant, at Hamlet, N.C. including the words, "If Government report," preceding the words, "fifty-six or under," was intended by plaintiff, and if same had been delivered to them by defendant, would have been understood by Hubbard Brothers Company as an order that if the Government report, expected that day, showed the condition of the crop to be fifty-six per cent or under of the normal crop, they should buy for plaintiff two hundred bales of cotton to be delivered during the month of December following; the order to buy said cotton was conditioned upon the report showing that the crop was fifty-six per cent or under of a normal crop.
Upon the opening of the market on 1 September, 1922, cotton for December delivery was selling at 22.85 cents per pound; the price fluctuated during the day between 22 and 23 cents. The telegram, which did not include the words, "If Government report," before the words, "fifty-six or under," was delivered to Hubbard Brothers Company on the floor of the Cotton Exchange at 10:18 a. m.; they understood the *Page 702 
telegram delivered to them to be an order from plaintiff to buy for him two hundred bales of cotton for December delivery at 22.56 cents per pound or under; they purchased said cotton for plaintiff at 22.50 and thereupon sent plaintiff a telegram by the defendant company as follows:
J. C. Leigh, Hamlet, N.C. Bought two December 22.50.
HUBBARD BROTHERS COMPANY.
This telegram was delivered to plaintiff soon after its receipt at defendant's office at Hamlet, at 11:27; at 12:17 p. m. plaintiff filed with defendant for transmission to sender, telegram as follows:
Hubbard Brothers Company, New York, N.Y.
My wire to you this morning was "if Government report was 56 or under buy two December." Evidently error in your buying at 22.50. Advise. J. C. LEIGH. (12:10 p. m.)
This telegram was received by Hubbard Brothers Company in New York, who filed reply thereto as follows:
J. C. Leigh, Hamlet, N.C.
Your order plainly read fifty-six or under buy two hundred December. You made no mention of Government. This was plainly a limited order which we executed at fifty. HUBBARD BROTHERS COMPANY.
This telegram was received at Hamlet, N.C. at 12:47 and thereafter delivered to plaintiff.
The New York Cotton Exchange closed on Friday, 1 September, 1922, at 2 p. m., and did not open for business until Tuesday, 5 September (the intervening Monday being Labor Day, was observed as a holiday).
At 6:52 p. m. Hubbard Brothers Company sent plaintiff a night letter as follows:
J. C. Leigh, Hamlet, N.C.
Naturally feel sorry that we did not interpret your order as you meant it but feel sure you accept our point of view. Have shown your order to several brokers and they all agree that it read to buy two December at a limit of fifty-six as nothing whatever was said about Government report, though you undoubtedly meant it when you wrote it out.
HUBBARD BROTHERS COMPANY. *Page 703 
Upon receipt of this night letter, plaintiff learned for the first time that the words, "If Government report" were not included in the telegram delivered by defendant to Hubbard Brothers Company, and that Hubbard Brothers Company had bought the cotton pursuant to a telegram received by them from which said words were omitted. Plaintiff thereupon wrote a letter to Hubbard Brothers Company, and sent same with copy of his telegram as filed at Hamlet by mail. By this letter he authorized Hubbard Brothers 
Company to close out the contracts. This they did on Tuesday morning, upon the opening of the Cotton Exchange, at a loss of $850, which they charged to plaintiff's account. They also charged to said account a commission of $50, and the war tax on the transaction, amounting to $4.36. The total amount thus charged was $904.36. Plaintiff testified that if the price of cotton had gone up he would have had the option of taking the cotton, or selling his contracts; that he would have tried not to lose anything; that he was not in this business for his health.
The Government report on 1 September, 1922, showed that the condition of the cotton crop was 57.2. When the report was published at noon on that day, plaintiff left the telegraph office, because, as he said, he knew he had no order in to buy cotton.
Defendant, as a separate and partial defense to plaintiff's action for damages, alleged that the message referred to in the complaint was delivered to and accepted by defendant subject to the terms of its standard message contract, by which defendant's liability for damages resulting from mistakes, or delays in the transmission or delivery, or from nondelivery of any message received for transmission at the unrepeated message rate was limited to $500; that said message was received by defendant for transmission at the unrepeated message rate.
The issues submitted to and answered by the jury were as follows:
1. Did the defendant negligently fail to properly transmit and deliver the telegram as alleged in the complaint? Answer: Yes.
2. If so, was plaintiff injured thereby? Answer: Yes.
3. Was said telegram sent under the terms of the contract and agreement as set out in the answer? Answer: No.
4. What damages, if any, is plaintiff entitled to recover? Answer: $904.36, and interest from 1 September, 1922.
From judgment upon this verdict, defendant appealed.
At the close of all the evidence, defendant renewed its motion for judgment as of nonsuit, first made at the close of plaintiff's *Page 704 
evidence and then overruled. C. S., 567. Defendant's first assignment of error is based upon exceptions to the refusal of the court to allow this motion. Defendant also, in apt time, requested in writing, that the court charge the jury, "That upon all the evidence, the jury should answer the second issue `No.'" The court refused to give this instruction, and defendant, having excepted to such refusal, assigns the same as error. Defendant thus presents its contention that in no event, upon the evidence, can plaintiff recover in this action the loss sustained by him upon the sale of the cotton purchased for him by Hubbard Brothers Company.
There is no contention by defendant that it transmitted and delivered the telegram as written and filed by plaintiff at Hamlet, N.C. It is admitted that the telegram transmitted and delivered to Hubbard Brothers 
Company, at New York, did not include the words, which made the telegram, as filed by plaintiff at Hamlet, a conditional order to the brokers to buy cotton. The words, "If Government report," before the words "fifty-six or under" were omitted from the telegram delivered to Hubbard Brothers 
Company. The failure to transmit and deliver the telegram, including these words, was evidence of negligence, sufficient to be submitted to the jury, upon the first issue. "It is well settled that where a telegraph company receives a message for delivery and fails to deliver it with reasonable diligence, it becomes prima facie liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse its failure." Hendricks v. Telegraph Co., 126 N.C. 309, cited and approved inWillis v. Telegraph Co., 188 N.C. 114; Strong v. Telegraph Co., 22 Anno. Cas., 1912A, 55.
Plaintiff, however, cannot recover of defendant the loss sustained by him, upon the sale of the cotton, unless the failure of defendant to transmit and deliver his telegram, containing a conditional order to buy cotton, was the proximate cause of such loss. The delivery by defendant to Hubbard Brothers Company, of a telegram, which was a limited order to buy cotton and which plaintiff had not filed with defendant, did not authorize the brokers to buy cotton for plaintiff at 22.50 and plaintiff was not bound by the contract made by Hubbard Brothers Company. The two hundred bales of cotton for December delivery bought by Hubbard Brothers Company at 22.50 was not plaintiff's cotton until after full knowledge that defendant had failed to transmit and deliver his telegram, which was a conditional order to buy; he ratified the purchase by his brokers by authorizing them to sell the cotton for him. Starnes v. R. R., 170 N.C. 222. The loss sustained by him, upon the sale of the cotton, on Tuesday morning, was not the result of the failure of defendant to transmit and deliver the telegram, which included the words, "If Government report" before the words, "fifty-six or under," *Page 705 
but was the result of plaintiff's acceptance of the cotton purchased by his brokers for him, without previous authority from him. It became his cotton upon his ratification of the act of his brokers, and as he would have been entitled to any profit, which a rise in the price of cotton might have brought him, he must sustain the loss resulting from a sale when the price of cotton had gone down. Plaintiff entered upon the transaction, not "for his health," but with full knowledge of the hazards incident to it. His loss was one of the casualties of the business.
The facts which the evidence in this case tend to establish are almost identical with the facts in the case of Cotton Oil Co. v. Telegraph Co.,171 N.C. 705. In the latter case, plaintiff delivered to the telegraph company at Mount Gilead, N.C. a message for transmission to John Kearns, at Wagram, N.C. offering twenty dollars per ton for cotton seed to be purchased by the said Kearns; the message delivered to Kearns included the word "two" after the word "twenty," making the offer "twenty-two dollars per ton" instead of "twenty." Acting upon the telegram delivered to him, Kearns bought four car loads of cotton seed, paying for same a price which he would not have paid had the offer in the telegram delivered to him been "twenty" instead of "twenty-two" dollars per ton. Plaintiff discovered the error made by the telegraph company the next day and countermanded the order to Kearns. Plaintiff paid Kearns for the cotton seed purchased by him prior to the discovery of the error, and then brought suit against the telegraph company for the amount paid Kearns in excess of the amount which it would have paid at twenty dollars per ton, claiming this amount as its damage, resulting from the erroneous transmission of its telegram.
This Court held, in the opinion written by the late Chief Justice Hoke, that the plaintiff could not recover of the telegraph company, as damages, the amount paid to Kearns in excess of the amount which it would have paid for the seed at twenty dollars per ton for the reason that plaintiff was not liable to Kearns for this amount, and that the payment to him of said amount was voluntary and made after the discovery by plaintiff of the error in the telegram. Plaintiff was not liable to Kearns for seed purchased by him under the telegram delivered to him, containing an offer of twenty-two dollars per ton. The seed so purchased were not plaintiff's seed until plaintiff, with full knowledge of the facts accepted them, and thereby ratified the offer of twenty-two dollars as contained in the erroneous telegram. The error in the telegram as transmitted was not the proximate cause of loss to plaintiff, as alleged.
In his opinion, Judge Hoke cites with approval the "learned and forcible opinion" of Judge Folkes, in Pepper v. Telegraph Co., 87 Tenn. 554. In that case, plaintiff, engaged in business as produce dealers at Memphis, Tenn., had filed with the telegraph company a telegram to be *Page 706 
transmitted and delivered to a broker at Birmingham, Ala., offering to sell a car of ribs at $6.60; in the telegram delivered to the broker, the price stated was $6.30; the broker accepted the offer made in the telegram as received by him and plaintiff shipped the ribs, drawing on the broker for $1650, the price of the car at $6.60. The broker refused to pay this draft, insisting that the contract price was $6.30, as stated in the telegram delivered to him and not $6.60 as stated in the telegram filed by plaintiff. Plaintiff accepted for the car of ribs $1575 and sued the telegraph company for $75, alleging said sum as his damages resulting from the negligent alteration of the telegram by the telegraph company. It was held that he could not recover this sum of defendant company, for the reason that no contract between plaintiff and the broker had resulted from the telegrams, exchanged between them, the plaintiff having made an offer to sell at $6.60 and the broker having accepted an offer at $6.30. Their minds had not met. "The minds of the party who sends a message in certain words, and of the party who receives the message in entirely different words, have never met. Neither can, therefore, be bound, the one to the other, unless the mere fact of employment of the telegraph company, as the instrument of communication, makes the latter the agent of the sender."
After a learned discussion of the principles and an exhaustive examination of the authorities, relied upon to support contrary views of the proposition, he concludes that a telegraph company is not the agent of the sender of a telegram. Judge Hoke, approving this conclusion, says: "There is much contrariety of decision on the question whether a telegraph company may be properly considered the agent of the sender so as to bind him by a contract made in his name or for his benefit by reason of a message which has been erroneously transmitted. In this jurisdiction it is held that the company, in such case and to that extent, is not the agent of the sender, that the latter is not bound by the terms of the erroneous message, and unless otherwise in default may not be held responsible for the effects of it." Pegram v. Telegraph Co., 100 N.C. 28. This conclusion is reached upon the principle that a telegraph company is a public service agency, and that neither the sender nor the sendee when in need or desirous of its service, has any choice in the selection of the means by which the service may be procured. This Court has adopted and followed the English, rather than the American, rule as to the liability of a sender to the sendee of an erroneous telegram. Judge Hoke says, in CottonOil Co. v. Telegraph Company, supra: "As now advised, we have no present disposition to question the soundness of the rule." See Jones on Telegraph Telephone Companies, 2 ed., 1916, secs. 471 and 473. This author says that the states recognizing in some form the English rule are Georgia, Massachusetts, Michigan, New Hampshire, North Carolina, Vermont and Wyoming. *Page 707 
Upon the facts presented in the instant case, however, it is immaterial whether the English or the American rule be applied to determine whether or not plaintiff was liable to Hubbard Brothers Company for the cotton purchased by them upon the erroneous telegram. Plaintiff, with full knowledge that the cotton had been purchased, without regard to the condition named in his telegram, upon receipt by Hubbard Brothers Company of the telegram, from which the words making his order conditional had been omitted, and that they had interpreted the telegram as received by them as a limited order, accepted the cotton, and took his chances of profit or loss, upon the rise or fall of the market. Defendant company cannot be liable for the loss, because of its failure to deliver the telegram as plaintiff wrote it.
In Shingleur v. Telegraph Company, 72 Miss. 1030, the facts were as follows: Plaintiff's cotton buyers, in Jackson, Miss., wired their brokers in Boston, directing them to sell 500 bales of cotton at eight and one-half cents per pound. In the telegram delivered to the brokers, the price was stated as eight and five-sixteenths, instead of eight and one-half. The brokers sold at the price named in the telegram as received by them and notified plaintiffs. Plaintiffs, with full knowledge of the error made in the transmission of the telegram, ratified the sale and sued the telegraph company for the difference between what they would have received had the cotton been sold at the price named in their telegram as filed, and the amount they actually received for the cotton sold at the price named in the telegram as delivered to their broker. It was held that plaintiffs could not recover. Judge Whitfield, writing the opinion for the Court, says: "Plaintiffs had incurred no legal liability; they had merely to refuse to comply with the terms of a contract they had never made, and remit their brokers to their adequate remedy against the company. Their payment was voluntary and gratuitous, and cannot, on any sound or just principle, create for them a cause of action where none existed prior to such voluntary payment." See, also, Harper v. Tel. Co. (S.C.), 130 S.E. 119.
We therefore conclude, upon the authority of Cotton Oil Company v.Telegraph Co., supra, that plaintiff cannot recover of defendant the amount lost by him, as the result of the decline in the price of cotton between his ratification of the purchase made for him by his brokers, and the sale made by them, acting under authority from him. Having reached this conclusion, it becomes unnecessary to consider or pass upon the other assignments of error. The assignments of error, based upon the refusal of the Court to allow the motion for judgment as of nonsuit under C. S., 567, must be sustained. There is no evidence from which the jury could find that plaintiff was injured by the negligence of defendant, as alleged. The judgment must be
Reversed. *Page 708