WHEELWRIGHT *et al. v.* WALSH.[1]

*(District Court, S. D. New York. December 6, 1890.)*

1. CHARTER-PARTY—REFUSAL TO LOAD—DAMAGES—FILLING PRIOR CONTRACT—MARKET VALUE.

Where a chartered vessel refused to take the cargo, (lumber,) and, owing to the consequent delay in arrival, the charterer was compelled to fill a contract of sale made long before by buying other lumber at a higher price, and there was no evidence of any fall in market price between such purchase and the arrival of the charter cargo, *held,* that the difference between his contract price and the price paid was not the rule of the charterer's damage, but the fall in market price, if any, during the delay in arrival; and, if there was no fall, then the only damage was the interest on the amount paid for the lumber so purchased during the time that elapsed before the charter cargo arrived.

2. SAME—WHARFAGE EXPENSES—HANDLING OTHER CARGO.

The cargo destined for the chartered vessel lay on a wharf obstructing other loading, and causing extra expense in handling other cargoes over it. The evidence showed that the expense thus incurred was less than the cost would have been to remove the cargo there waiting until it could be shipped. *Held* that, treating this as a substituted expense, it should be allowed as an item of the charterer's damage.

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. On exceptions to commissioner's report.
*Owen, Gray & Sturges*, for libelants.
*Carpenter & Mosher*, for respondent.

BROWN, J. The respondent having been held liable for the breach of a charter of the Caroline Miller to bring a cargo of lumber from Fernandina to New York, (42 Fed. Rep. 862,) the respondent in the report on damages has been held liable, not only for the difference of freight in sending the lumber by other vessels, but for a supposed loss occasioned to the libelants in consequence of their being compelled to purchase in New York a certain amount of lumber in order to fill in time their own contract of sale to McLean, which they had designed to fill from the charter cargo, on which purchase the libelants paid a higher price than that at which they had several months before contracted to sell and deliver to McLean. Another item allowed is for the extra cost of handling certain other lumber belonging to the libelants at Fernandina, in passing it over the lumber that lay on the dock ready for shipment under this charter. The charter did not make reference to any specific lumber, nor require its delivery at any specific time. The voyage was in fact once postponed at the libelants' request for the transportation of a cargo of railroad ties by the same vessel, and that intermediate voyage has caused all the litigation. This claim is not even for any fall in the market price of the lumber intended to be forwarded by the Miller, but because the cargo did not reach New York in time for the libelants to fill a specific order. This order and intended destination of the lumber for McLean were not referred to in the charter, and were not any part of the contract between these parties. They were not within the contemplation of the respondent when the charter was made, nor was this alleged loss in the additional price paid one of the ordinary or natural consequences of the breach of it. *Telegraph Co.* v. *Hall,* 124 U. S. 444, 455, 456, 8 Sup. Ct. Rep. 577; *Railway Co.* v. *Kellogg,* 94 U. S. 469. 475; *The New York,* 40 Fed. Rep. 900. The loss, if any, did not arise from the breach of the charter alone, but from the libelants' special contract as well, made several months before, to sell and deliver at a price named, of which the respondent had no knowledge. Again, there was no evidence that the contract price with McLean was the market price of lumber at the time when the Miller, had she performed her charter, might reasonably have been expected to arrive in New York. The defendant cannot be held bound to such a price, fixed long before delivery by the Miller was to be expected. The contract price to McLean, fixed months before, was, moreover, no legal criterion for determining whether the libelants sustained any legal damage by the Miller's breach of charter, and the consequent delay in the arrival of the lumber. That would be determined by the market price of lumber during this interval. I do not find any evidence in the case as to the market price of lumber at any time. In the absence of any such evidence, it must be assumed that, in making the purchase to fill the McLean order, the libelants paid no more than the market price; and that when their own

lumber arrived by other vessels a few weeks afterwards, it was worth as much as they had paid for what they purchased, and that consequently no legal damage of that kind resulted.    There is no evidence of any fall in the market price in the mean time, or that what arrived late could not be sold, or was not sold, by the libelants for as much as they had paid in order to fulfill the McLean contract.    The burden of proof is upon the libelants; and, without some proof of change in market value, there is no basis to recover under this head, except for interest on the amount so purchased during the few weeks that elapsed until their own lumber arrived to replace that purchased.    Upon both these grounds, this item of damage should be disallowed.    *The Tribune*, 3 Sum. 144, 151; *Oakes* v. *Richardson*, 2 Low. 173, 178; *The City of Alexandria*, 40 Fed. Rep. 697, 700.

As respects the other item of damage in the extra cost of handling other lumber over the cargo waiting for the Miller, I have also great doubt.    Considered by itself, it would be excluded as a remote and accidental consequence; but the evidence shows that the extra expense allowed was incurred instead of the greater expense that would have arisen from removing the Miller's cargo from the dock, where it lay waiting for her, until other transportation could be procured.    There is some difficulty in determining the real damage from this cause.    The commissioner has endeavored to adjust it, evidently with scrupulous care, and on the whole I conclude not to disturb his finding in this respect, treating it as a substituted expense in place of that which would be naturally incident to the Miller's cargo itself, and the necessary rehandling thereof in consequence of the breach of the charter.    *The Rossend Castle*, 30 Fed. Rep. 462; *The Giulio*, 34 Fed. Rep. 909.    With the above modification, the report is confirmed.