CHOCTAW, OKLAHOMA & GULF RAILROAD CO. v. ROLFE.

Opinion delivered July 1, 1905.

1. ( CARRIER—DEMAND FOR CARS—SUFFICIENCY OF COMPLAINT.—In a complaint against a railroad company for failure to furnish cars for shipping freight an allegation in the complaint that the plaintiff made demand for cars of defendant's agents at certain stations shows demand of the proper authority, without alleging that these agents had authority to furnish cars. (Page 222.) )

2. SAME—SUFFICIENCY OF COMPLAINT.—An allegation, in an action against a carrier for failure to furnish cars as requested by a shipper, that a certain station was the place where demand should be made, as the shipping point had no agent, was not demurrable, as the defendant was notified upon whom the demand was made, and the facts were peculiarly within defendant's knowledge. (Page 222.)

3. SAME—ALLEGATION OF TENDER OF FREIGHT.—An allegation, in a complaint against a carrier for failure to furnish cars for shipment of freight, that plaintiff offered and tendered said freight to the agents of defendant at certain stations for shipment and demanded cars of them during a certain month was sufficient, without alleging the names of such agents or the times and places of said requests. (Page 222.)

4. EVIDENCE—PROOF OF AGENCY.—Statements of persons described as the general manager and the general traffic manager, respectively, of defendant were properly introduced in evidence, without other proof of their official positions than that plaintiff was introduced to the general manager as such by defendant's station agent, and that plaintiff's witness went to the general offices of defendant and secured an

audience with the general traffic manager who was recommended to witness as such, and was in the office doing business. (Page 223.)

5. Carrier—damage for delay shipment.—A carrier is liable for the depreciation in freight during the time of its negligent failure to furnish shipping facilities. (Page 223.)

6. Same—special damages for delay.—Where the general traffic manager of a railroad company, having notice of a contract between plaintiff and his vendee, and that its fulfillment was dependent upon securing cars for shipment, and that delay in furnishing such cars would occasion certain expenses to plaintiff, told plaintiff to make the contract, and the cars would be furnished, plaintiff had a right to rely upon such assurance, and to recover such expenses as were reasonably incurred in reliance thereon. (Page 223.)

Appeal from St. Francis Circuit Court.

Allen Hughes, Judge.

Affirmed.

*E. B. Peirce* and *T. S. Buzbee,* for appellant.

*Norton & Prewett,* for appellee.

Hill, C. J.  Rolfe was engaged in cutting and shipping logs, and had a quantity of them at Widener and Proctor stations on appellant's line of railroad. Darnall wanted to purchase them delivered on board the cars at these stations, and Rolfe was not willing to enter into the contract until he had assurances that he could get the cars for the shipments. Ward, representing Darnall, went to see the traffic manager of the appellant at Little Rock about the matter, and explained the situation, and he told Ward to make the contract, and the cars would be furnished. Rolfe saw the agent at Forrest City, and he arranged a meeting between Rolfe and the general manager of the road, who was coming over the line in a special car. Rolfe saw the manager, showed him the logs, and explained the situation to him, told him he would have got out the logs before if he had had cars, and about the expenses incident to loading them with teams. The general manager promised he would get the cars, and Rolfe proceeded to get out the logs for shipment to Darnall. Very shortly after the conversation with the general manager in August, he received three cars at Proctor, and then did not receive any more cars till October, when he commenced receiving them again, and received 27 cars from October 11 to some time in January, when his logs

were finally shipped.    He kept teams for loading at Proctor during the interval from August to October, and was daily making demands of the various agents and officers of the road, from the agent at Edmondson, where orders for Proctor were taken, to the principal officers of the company.    Rolfe sued for damages to the logs by reason of depreciation while loading them for shipment, and for expenses of his teams at Proctor from August to October, alleging that it was necessary to keep them there in order to load the logs when the cars arrived.    The uncontroverted evidence placed the damages for depreciation at $264, and the jury gave him that sum and $200 special damages on account of the expenses of his teams.

1.    The first point made is that a demurrer to the complaint should have been sustained.    The allegation of the complaint assailed by the demurrer is:    "The plaintiff had a great number of times demanded of defendant, through its agents at Forrest City and at Widener, and at Edmondson for Proctor, and at other times by letters addressed to the defendant's principal offices at Little Rock, that cars be placed on the side tracks at said stations of Proctor and Widener, that plaintiff might load said logs."    The objection is that there was no allegation that these agents had authority to furnish cars, and that it is not stated to what principal offices the letters were addressed.    The allegation that he demanded of the agent at Widener for that place shows demand of the proper authority.    1 Elliott on Railroads, § 363.    The allegation is that Edmondson was the place to demand for Proctor, there being no agent at Proctor, is sufficient, and apprised the company of the agent upon whom demand was made; and if he was not the agent in control of Proctor, that was a fact peculiarly within the company's knowledge.    The demurrer was properly overruled.

2.    The appellant asked that the amended complaint be made more specific by setting out, (1) to which of defendant's agents or servants plaintiff tendered the timber, (2) from which of said agents or servants he requested cars and the exact times and places of said requests, (3) the exact number of times he requested cars from defendant's agent at Forrest City, and (4) the dates of the letters and the offices of defendant to which said letters were addressed.    The complaint alleged that the plaintiff

placed for shipment at the stations named certain quantities of logs, "and that he offered and tendered for shipment said timber." This allegation shows with reasonable certainty that the tender was to the respective station agents. The allegation is that the tender and demands were made in August, and the company certainly could ascertain from these small stations whether such was a fact. This is not analogous to the duty to furnish names or numbers of trains causing injury, for there are so many trains operated by different crews that it is only fair to definitely designate the train in order that the company may properly learn the facts. The allegation about demand of the principal officers at Little Rock was unnecessary, and, of course, an unnecessary allegation should not be made more definite and certain.

3. Objection is made that incompetent evidence was introduced in the statements of Mr. Wood and Mr. Holden, who were described as general manager and general traffic manager, respectively, without proof of their official positions. The station agent at Forrest City brought about a meeting between Mr. Wood and Rolfe, and Mr. Wood took Rolfe into his special car, and carried him to Memphis, and Rolfe understood from his relations to the company, the statement of the agent, and his actions that he was general manager, or "president of the concern." Mr. Ward found Mr. Holden in the general offices of the company at Little Rock, and secured an audience with him there on the subject of securing cars if he entered into the contract to purchase the logs. "He was recommended to witness as the general traffic manager. He was in the office doing business." The testimony was not incompetent.

4. The elements of damage are assailed. The depreciation in the logs during the time of the negligent failure to ship them is too plain for discussion. See Sutherland on Damages (3d Ed.) § 37. The damage arising from expenses of keeping the teams rests on a different proposition. These constitute special damages, were sued for as such, and specially found as such by the jury. For a breach of an implied contract of carriage, or the breach of any contract, before special damages are recoverable, the facts and circumstances leading to the special damages must be made known to the party to be charged, in order that he may properly avoid them. When thus made known, and the natural

consequences flow from the special circumstances brought home to the contracting party, he is liable for the special damages. This rule, and its application to implied contracts of carriage and delivery, may be found discussed in *Vicksburg & M. Rd. Co.* v. *Ragsdale,* 46 Miss. 458; *Ligon* v. *Ry.* 3 Tex. Ct. of Appeals, Civil Cases, 1; *Western Union Tel. Co.* v. *Hall,* 124 U. S. 444; *Crutcher* v. *C. O. & G. Rd. Co.,* 74 Ark. 358; Hutchinson on Carriers, § 776. Applying the principles to the facts, the uncontroverted evidence shows that the general traffic manager had notice of the intended contract between Rolfe and his vendee, and that it was dependent on securing the cars, and that he told the parties to make the contract, and the cars would be furnished. Rolfe personally showed the logs to the general manager of the road, and explained the method and expense of loading them, and was assured that he would receive the cars, and did receive three cars shortly thereafter. He had a right to rely upon these assurances for a reasonable time, and keep his teams on expense, expecting the fulfillment of the duty to furnish the cars. The evidence shows he was very assiduous in his efforts to get the cars in the time of this delay. The jury gave him much less than his evidence showed his expenses were, and the court is of opinion that there is sufficient evidence of notice to the company of the special circumstances to render it responsible for special damages in keeping the teams for a reasonable time.

The judgment is affirmed.