Wells Fargo & Company, Express *v.* W. B Baker Lumber Company.

Opinion delivered October 26, 1914.

1. Evidence—best evidence—contents of document.—Parol testimony as to the contents of certain letters is inadmissible, in the absence of a showing that the letters could not be produced at the trial, since the best evidence is the letters themselves.

2. Trial—excerpts from depositions—discretion of court.—It is not an abuse of the discretion of the trial court to refuse to permit counsel to read, during his argument to the jury, excerpts from a deposition, which had been introduced in evidence.

3. Evidence—deposition—dispute as to contents—practice.—Where a sharp dispute arises between counsel, during the argument to the jury, as to the contents of a certain deposition, the court

should permit the deposition to be re-read in the hearing of the jury to settle this controversy.

4. Evidence—uncontradicted testimony—instructions—submission to jury—prejudicial error.—It is prejudicial error to submit to the jury a question which the uncontroverted evidence established in favor of one of the parties as though it were a disputed question of fact.

5. Damages—special damages—allegations and proof.—In an action against an express company for damages for delay in the delivery of an article shipped, namely a part of the machinery of a saw mill, special damages to timber due to the inability of plaintiff to saw the same, due to defendant's negligence, can not be recovered without an allegation and proof that such damage was caused by defendant's negligence, and the defendant had special notice of such damage at the time of the shipment.

6. Evidence—question for jury—prejudicial error—express company.—In an action against an express company for damages for failure to deliver a piece of machinery to the consignee thereof, where there was testimony that defendant company notified the consignee of the arrival of the machinery, it is prejudicial error to charge the jury that defendant is guilty of negligence as a matter of law, when at a later date one of defendant's employees told the consignee that the piece of machinery had not arrived. The question of negligence, under the facts, should have been submitted to the jury.

Appeal from Cleburne Circuit Court; *George W. Reed,* Judge; reversed.

STATEMENT BY THE COURT.

This was a suit by the appellee against the appellant for special damages growing out of the alleged negligent failure of the appellant to properly deliver a certain piece of machinery. It was alleged in the complaint that the plaintiff, appellee here, delivered to defendant, the appellant, a planer cylinder, which was an indispensable part of the machinery used by the plaintiff in the operation of its lumber mill, to be transported to the Harrison Foundry Company, at Harrison, Arkansas; that plaintiff paid the defendant a greater charge for the transportation in order to secure prompt delivery of the same; that plaintiff at the time notified the defendant that the piece of machinery was necessary in the operation of its

mill; that the defendant undertook to deliver the planer cylinder to said foundry company with due and reasonable dispatch and with full knowledge that any delay in the prompt and reasonable diligence in the delivery of said planer cylinder would damage plaintiff; that the defendant should have delivered the piece of machinery on the morning of August 28, 1911, but carelessly and negligently failed to do so for fourteen days, to the damage of plaintiff in the sum of $2,990, which represents the rental value or earning power of the mill and the expense of holding the employees and payment of their wages during such time and the loss of orders and customers; that had the defendant promptly delivered the piece of machinery to the foundry company that the company would have promptly repaired and returned the same to the plaintiff and the loss and damage would not have occurred.

The defendant admitted that the plaintiff delivered to it the planer cylinder for transportation, as alleged, and paid the price charged for such transportation. It denied specifically the allegations as to notice of special damages, and the allegations of negligence, and denied that any damages occurred.

The defendant alleged that it received the planer cylinder for transportation on the 27th of August, 1911, and promptly transported the cylinder to Harrison, where it was received on the morning of the 28th of August, 1911; that defendant thereupon immediately notified the Harrison Foundry Company, the consignee, that said cylinder was in its office and requested the consignee to call for the same, which it failed to do; that the consignee foundry company was situated outside the delivery limits of the defendant, which the consignee well knew.

The testimony on behalf of the plaintiff tended to show that on Sunday, the 27th of August, 1911, it delivered to the defandant, at Heber Springs, Arkansas, what is called a planer cylinder, a portion of the machinery used in the operation of its planing mill; that it

was a necessary part of the machinery for operating the mill. When appellee's agent delivered the planer cylinder to appellant's agent for transportation he told the agent that he desired to send same by express in order to hasten its transportation. He notified appellant's agent that the mill would have to shut down until the cylinder got back and that he wanted it back by Tuesday morning; that it was fourteen days before the planer cylinder was back in the mill and the mill was idle during that time.

Testimony was introduced to the effect that some time in August, the Harrison Foundry Company received letters from appellee advising the foundry company that appellee contemplated shipping to it the planer cylinder to be repaired. The appellant objected to this testimony, whereupon the appellee introduced witnesses who were members and employees of appellee, who testified that letters were written by the appellee to the foundry company with reference to the repair of the machinery, and also sent several telegrams; that appellee did not keep a copy of the letters, and that if any replies to this correspondence was received from the foundry company they did not know where they were; had made a search for them in the files, but had not found them.

The attorney for the appellee also testified that he had been unable to find the original letter that the appellee claimed it wrote to the Harrison Foundry Company asking where the casting was.

The appellant objected specifically to the testimony in regard to this correspondence, for the reason that the correspondence itself was the best evidence, and that the foundation had not been laid for the secondary evidence.

A witness, who was the agent of the foundry company at Harrison, testified that he had received a letter from appellee in regard to the repairs of the piece of machinery; he stated that he replied to the letter and advised the appellee as to how long it would take to repair the same. The next information the witness had about the planer cylinder was when he got a letter from

appellee asking why it had not been shipped back. Witness then went to the express office and inquired about the piece of machinery and was told by the daughter of the express agent, who was working in the office, that the machinery was not there. Witness went to the express office and made this inquiry after receiving the letter inquiring as to why the machinery had not been shipped back. Witness also received a telegram from appellee asking why the repairs were not made and requesting that the planer cylinder be shipped back. When witness received that telegram he telephoned to the express company and told them that if the thing showed up to ship it back without delivering it. They did not tell witness at that time that the cylinder was at Harrison; they said they would ship it back. Witness received another telegram from the appellee on the night of the 8th of September, to which the witness replied at the time. The next day the witness went to inquire about the cylinder, to see whether they had shipped it back, and while he was there Miss Flynn, who was the daughter of the agent, said there was a shipment there for the foundry company and asked witness to come and look at it. She showed witness a return shipment from Marshall. While witness was there the express deliveryman came in and asked witness when he was going to take that piece of machinery. Witness looked at the piece of machinery; it weighed about 30 pounds. He paid the charges for the return shipment and nothing more was said. The express company did not notify the foundry company before this that the cylinder was at Harrison that witness knew of. The foundry company never received a postal card or anything else notifying the foundry company that the machinery was at Harrison. The planer cylinder was delivered at the foundry on the 12th of September and was repaired in about three and a half hours and returned to the appellee the same day. If the foundry company had received it on any of the days it was in appellant's express office it would have been re-

paired promptly and returned to the appellee lumber company.

It was proved that the foundry company was about a quarter of a mile from the depot, and within the corporate limits of Harrison. It was about a half mile from the depot to the express office. The foundry was outside of appellant's delivery limits.

It was shown that packages were always taken to the express office from the station. The express company did not deliver articles off of the square. The foundry company had tried to have articles delivered at its foundry, but the express company would not deliver them.

It was shown that the mill was shut down thirteen or fourteen days by reason of the absence of the planer cylinder. In about two weeks after the machinery had been sent to Harrison one of appellee's agents went there to locate it. He went to the express office and they told him they had a piece of machinery back there that they didn't know whose it was or where it came from. Appellee's agent then had the planer cylinder delivered to the foundry company and it was fixed and sent back that day. When witness went to the express office and found the piece of casting there was no tag of any kind on it or anything fastened to it.

There was testimony introduced, over the objection of appellant, tending to show that the earning capacity of the mill was $100 per day. When it was operated it employed about 15 or 20 men who were paid from $1.00 to $2.50 per day. The pay-roll was $35 or $40 a day. The employees were kept on hand during the time the mill was shut down in order to have them when work was resumed and they were paid their wages during the interval of fourteen or fifteen days that the mill was shut down.

The appellee was permitted to show, over the objection of appellant, that somewhere between one hundred and thirty and one hundred and fifty thousand feet of

lumber was stacked on the yard and turned blue and black; that this was caused by the mill not being in operation; that the damage to this lumber was $5.00 per thousand feet.

The testimony on behalf of the appellant tended to show that it received the planer cylinder at the railway station at Harrison on the morning of August 28. It was taken from the station to the express office up town about 7 or 8 o'clock. Appellant notified the foundry company that the casting was there, shipped by the appellee to the foundry company from Heber Springs. The agent of the foundry company stated that he would send a drayman for it, but did not do so.

There was other evidence on behalf of the appellant tending to show that it notified the foundry company that the casting was on hand as soon as the same was received by appellant at Harrison, and tending to rebut the testimony of the appellee on the issue of negligence.

Among others, the court granted appellee's prayer for instructions as follows:

"1.    I charge you that if you find from a preponderance of the testimony in this case that the plaintiff delivered to the defendant's agent at Heber, on the 27th day of August, 1911, for transportation and delivery to the Harrison Foundry Company at Harrison, Ark., and that such agent accepted the same, then it became the duty of the defendant company to transport and deliver same with reasonable dispatch and promptness; and if you find that the plaintiff at the time notified such agent of defendant that the absence of the machinery would result in the closing down of the mill until its return, and the agent of defendant accepted same with such knowledge, then the defendant would be chargeable with special damages if it failed to promptly transport and deliver same within reasonable time according to the rules of the company."

"3.    I further charge you that even though you should find the rules of the company only require it to

notify the foundry company of the presence of the machinery because of their place of business being outside the delivery limits, and should further find that the driver of the company did tell the foundry company's man on the day it was received of its presence; still, if you further find from a preponderance of the testimony that when the foundry received a letter from the plaintiff, he then went and inquired and was informed by the agent of the defendant that no such machinery was there, and thereby a delivery was prevented, you will find for the plaintiff such damages as you may find, if any, that resulted to plaintiff thereafter.''

Plaintiff objected and duly excepted to the giving of these prayers for instructions.

The appellant, among others, requested the following prayer for instruction:

''3.   You are instructed that the undisputed proof in this case is that the place of business of the Harrison Foundry Company, the consignee, was outside of the delivery limits of the defendant express company, and upon that issue of fact the court instructs you to find for the defendant.''

The court refused the foregoing prayer for instruction, and appellant duly saved its exceptions.

The verdict was as follows: ''We, the jury, find for the plaintiff and assess its damages for loss of profits, $600; and for loss of wages paid employees, $120; for injury to timber, $270; for expense sending man to Harrison, $7; total, $997.''

A motion for a new trial was overruled, judgment entered for the appellee in the above sum and the cause is here on appeal.  Other facts stated in the opinion.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1.   Parol testimony to prove the contents of letters and telegrams is not admissible until it is shown that the originals can not be produced.

2.   The court erred in not permitting counsel for appellant to read excerpts from the deposition of the witness, Paden, in support of the contention he was making in his argument, and the language used by the court in refusing such permission was prejudicial to the defendant and placed its attorney at a disadvantage before the jury.

We think counsel unquestionably had the right to read the written testimony, as the best method to remove any uncertainty in the minds of the jurors as to what the testimony really was.   103 Pac. 28; 20 S. E. 465-467; 153 S. W. 21-23; 46 N. W. 59, 60.

3.   Instruction 1, given by the court, was erroneous and prejudicial, in that it imposed upon appellant an unqualified duty to deliver the casting, notwithstanding the consignee's place of business was without the delivery limits.

4.   Instruction 3, given by the court, on the theory that the consignee called for the freight and was told that it was not on hand, is erroneous in telling the jury that appellant would be liable for all damages "that resulted to the plaintiff after that time;" also in that it makes the statement of an employee of appellant that the freight was not on hand, conclusive evidence of negligence, and for the further reason that it submits to the jury the question whether the consignee's mill was within the delivery limits, whereas there was no contradiction of the evidence that it was without the delivery limits. 67 Ark. 147-154; 72 Ark. 401; 88 Ark. 20-25; 57 Ark. 461; 69 Ark. 497.

5.   The court erred in refusing to give the third instruction requested by the appellant, that the consignee's place of business was outside of defendant's delivery limits.   57 Ark. 466.

6.   The court erred in admitting testimony and instructing the jury with respect to damage caused to the lumber from bluing. 5 Enc. Pl. & Pr. 179; 13 Cyc. 176; 3 Sedgwick on Damages, § 1261; 1 Sutherland on Damages 763; 74 Ark. 358; 76 Ark. 220-223.

No brief filed for appellee.

Wood, J., (after stating the facts).    (1)    The court
erred in permitting the witnesses on behalf of the appellee
to testify as to the contents of certain letters which it
wrote to the foundry company in regard to the contem-
plated shipment of the "casting" and also as to the let-
ter making inquiry as to why the casting had not been
returned.    These were letters addressed to the foundry
company, and the primary evidence was the letters them-
selves.    No sufficient foundation was laid for the intro-
duction of testimony concerning the contents of these let-
ters.    It was not shown that the letters were not in the
possession of the foundry company, and that they could
not have been obtained and produced at the hearing.

In the course of the argument of the attorney for the
appellant, he turned to the deposition of a certain wit-
ness and started to read from it. Counsel for appellee ob-
jected to his doing so.  Counsel for appellant thereupon
stated that he did not desire to read the entire deposition,
but merely to quote excerpts which, in his opinion, would
bear out the contention he was then making in his argu-
ment, and he requested the court's permission to read
to the jury such excerpts.    The court refused to grant
such permission and refused to permit him to quote to
the jury any portion of the testimony of said witness by
reading from said deposition, the court stating in the
presence of the jury, "the evidence of the witness is in-
troduced but once in my court." Appellant objected and
excepted to this statement of the court and also to the
ruling of the court in refusing to permit counsel to read
to the jury excerpts from the deposition of the witness.

(2-3)    There was no prejudicial error in the ruling
of the court in refusing to permit the counsel to read ex-
cerpts from the deposition nor in the remarks of the court
giving his reasons for such ruling. It is within the sound
discretion of the court to grant or refuse permission to
read excerpts from depositions of witnesses that have
been read in evidence to the jury.    Where there is a sharp
dispute between counsel representing the respective par-

ties to litigation as to what the deposition contained, then the court should permit the deposition to be re-read in the hearing of the jury to settle this controversy. But here the counsel announced that he merely wished to quote excerpts from the deposition in order to show that he was correct in his opinion of the testimony, and the contention that he was making in his argument. But the record does not disclose that the counsel for the appellee had challenged the correctness of any statement made by counsel for the appellant as to the contents of the deposition that had been read, and the court did not err, therefore, in refusing to permit counsel, in argument, to read from the deposition.

The remarks of the court in making its ruling were only tantamount to saying that the court would not permit the time to be consumed in reading the deposition more than once. It was the duty of the trial judge to see that the proper order of procedure was observed in the manner of introducing testimony and the arguments made before the jury, and this court will not reverse for the ruling of the trial court on these questions of procedure unless it appears that there is an abuse of the court's discretion which results in prejudice to the party making the objection. While the court might very properly have permitted the counsel to read the extracts he desired to read in order to show that he was stating the testimony correctly, the court did not err in refusing this permission and in thus leaving the matter to the recollection of the jury who had heard the reading of the deposition.

(4) The court erred in granting appellee's prayer for instruction No. 1. This instruction was misleading. The jury were authorized by it to find that it was the duty of the appellant to deliver the casting to the consignee after it had reached Harrison. But, according to the undisputed testimony, the foundry company, the consignee, was situated beyond appellant's delivery limits, and there was no duty, therefore, resting upon appellant to deliver the casting to the consignee. Appellant's duty in this regard was to promptly give notice to the con-

signee of the arrival of the casting at Harrison and to deliver it to the consignee on its demand at appellant's place of business. Notwithstanding the undisputed evidence to the contrary, the jury, under the instruction, were told that it was the duty of the appellant to deliver the casting with reasonable dispatch and promptness. The court should have refused appellee's prayer in this regard, and should have instructed the jury as requested by the appellant, that the place of business of the foundry company, the consignee, was outside of the delivery limits of the appellant. It was prejudicial error to submit that which the uncontroverted evidence established in favor of the appellant as though it were a disputed question of fact. "Where there is no evidence to sustain an issue of fact, the judge only declares the law when he tells the jury so." *Catlett* v. *Ry. Co.* 57 Ark. 466.

(5)  The court erred in admitting testimony and instructing the jury concerning damages to the lumber from bluing, and the verdict and judgment for damages in that particular were erroneous. The complaint does not aver that any such damages had resulted by reason of the alleged negligence of the appellant, nor was there any allegation in the complaint that any special notice was given to the appellant that such damages would result. If such damages did result it was special and could not be recovered without an allegation and proof that such damage was caused by the negligence of appellant, and that appellant had special notice of such damage at the time of the shipment. See 5 Enc. Pl. & Pr. 719; *Crutcher* v. *C. O. & G. Rd. Co.,* 74 Ark. 358; *C. O. & G. Rd. Co.* v. *Rolfe,* 76 Ark. 220-223; 13 Cyc. 176; 4 Scdg. on Damages, § 1261.

(6)  The court erred in granting appellee's third prayer for instruction.

The testimony on behalf of appellant tended to show that appellant in due time notified the consignee foundry company, through the agent whose duty it was to give such notice, that the planer cylinder had been received. But this instruction makes appellant guilty of actionable

negligence as a matter of law because one of its agents, according to the testimony, told an agent of the foundry company, upon inquiry, that no such piece of machinery had been received. Notwithstanding this reply, it was still a question for the jury to say, under the circumstances, whether or not appellant was negligent. But the instruction makes the bare statement of one of the employees of appellant that the machinery was not on hand (in answer to the inquiry of the agent of the foundry company) conclusive evidence of the negligence of the appellant. The foundry company, having received due notice through appellant's agent that the planer cylinder had been received by appellant, could not, as a matter of law, make the appellant liable by simply inquiring of one of appellant's employees as to whether the piece of machinery was on hand, upon the reply simply of such employee that it had not been received, when it was not shown that such employee of the appellant was in charge of the piece of machinery or that it was the duty of such employee to know that the machinery was on hand.

The effect of the instruction was to make the appellant guilty of actionable negligence as a matter of law under such circumstances, whereas the question should have been left to the jury to determine as to whether, under such circumstances, appellant had failed to exercise ordinary care to notify the foundry company of the arrival of the planer cylinder in order that the same might be in due time delivered to the consignee.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.